```
                                                                    1

 1    UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF NEW YORK
 2
      ------------------------------x
 3                                              19-CV-33(RJD)
      ESTER LELCHOOK, et al.,
 4                                              United States Courthouse
              Plaintiffs,                       Brooklyn, New York
 5
              - versus -                        October 17, 2019
 6                                              2:30 p.m.
      SOCIETE GENERALE DE BANQUE
 7    AU LIBAN SAL, et al.,

 8            Defendants.

 9    ------------------------------x

10
              TRANSCRIPT OF CIVIL CAUSE FOR PREMOTION CONFERENCE
11                  BEFORE THE HONORABLE RAYMOND J. DEARIE
                    UNITED STATES SENIOR DISTRICT JUDGE
12

13    APPEARANCES

14    Attorney for Plaintiff:    THE BERKMAN LAW OFFICE, LLC
                                  111 Livingston Street
15                                Suite 1928
                                  Brooklyn, New York 11201
16                                BY:  ROBERT J. TOLCHIN, ESQ.

17
      Attorney for Defendants:   DLA PIPER LLP (US)
18    Byblos Bank, Bank of        1251 Avenue of the Americas
      Beirut and Lebanon          New York, New York 10020
19    and Gulf Bank               BY:  JONATHAN D. SIEGFRIED, ESQ.

20
      Attorney for Defendants:   ASHCROFT LAW FIRM
21    Societe Generale            200 State Street
      Bank of Lebanon SGBL        7th Floor
22                                Boston, Massachusetts 02109
                                  BY:  MICHAEL J. SULLIVAN, E SQ.

23

24

25
```

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

1 APPEARANCES (CONTINUED)

2 Attorney for Defendant:    SQUIRE PATTON BOGGS LLP
  MEAB Bank                  2550 M Street, NW
3 Middle East Africa Bank    Washington, DC 20037
                             BY:  MITCHELL R. BERGER, ESQ.
4                                 GASSAN A. BALOUL, ESQ.

5
  Attorney for Defendant:    SQUIRE PATTON BOGGS LLP
6 MEAB Bank                  30 Rockefeller Plaza
  Middle East and            New York, New York 10112
7 Africa Bank                BY:  JOSEPH S. ALONZO, ESQ.

8
  Attorney for Defendant:    MAYER BROWN LLP
9 Banque Libano-Francaise    1221 Avenue of the Americas
                             New York, New York 10020-1001
10                           BY:  MARK G. HANCHET, ESQ.

11
   Attorney for Defendant:   SHEARMAN & STERLING LLP
12 Bank of Beirut S.A.L.     599 Lexington Avenue
                             New York, New York 10022-6069
13                           BY:  BRIAN H. POLOVOY, ESQ.

14
   Attorney for Defendant:   WHITE & CASE, LLP
15 Jammal Trust Bank         701 Thirteenth Street, NW
                             Washington, DC 20005-3807
16                           BY:  NICOLE E. ERB, ESQ.

17
   Attorney for Defendants:  DECHERT LLP
18 BLOM Bank and             1095 Avenue of the Americas
   Fransabank                New York, New York 10036-6797
19                           BY:  LINDA C. GOLDSTEIN, ESQ.

20

21
   Court Reporter:           LINDA D. DANELCZYK, RPR, CSR, CCR
22                           Phone:  718-613-2330
                             Email:  LindaDan226@gmail.com
23

24

25 Proceedings recorded by mechanical stenography.  Transcript
   produced by computer-aided transcription.

1           (In open court.)

2           THE COURTROOM DEPUTY:  We are on this afternoon for

3   a premotion conference.  This is Lelchook versus Societe

4   Generale, Docket Number 19-CV-00033, assigned to Judge Dearie

5   and Magistrate Judge Bulsara.

6           Can I ask the attorneys please to note their

7   appearance, beginning with counsel for the plaintiff.

8           MR. TOLCHIN:  Counsel for the plaintiff, Robert

9   Tolchin, The Berkman Law Office, 111 Livingston Street in

10  Brooklyn.

11          THE COURT:  Mr. Tolchin, welcome.

12          Ellie -- excuse me just a second.

13          THE COURTROOM DEPUTY:  Yes, sir.

14          (Pause.)

15          THE COURT:  All right, gentlemen on the defense side

16  want to state their appearance.

17          THE COURTROOM DEPUTY:  Okay, we'll begin with

18  Mr. Sullivan.  You represent the defendant?

19          MR. SULLIVAN:  Good afternoon, Your Honor.  Michael

20  Sullivan on behalf the Societe Generale, Bank of Lebanon SGBL.

21          THE COURT:  Mr. Sullivan.

22          No particular order.  Go ahead.

23          MR. SIEGFRIED:  It's up to the clerk, as always.

24          THE COURT:  Yes, the boss.  My boss.

25          MR. SIEGFRIED:  Jonathan Siegfried on behalf of

1   Byblos Bank, Bank of Beirut, and Lebanon, and Gulf Bank.

2              THE COURT:  Nice to see you.

3              MR. BERGER:  Good afternoon, Your Honor.  Mitchell

4   Berger, Squire Patton Boggs, along with my colleague, Gassan

5   Baloul, here on behalf of MEAB Bank, which is sued as Middle

6   East and Africa Bank.

7              THE COURT:  All right, Mr. Berger.

8              MR. HANCHET:  Good afternoon, Your Honor.  My name

9   is Mark Hanchet.  I'm from Mayer Brown.  I'm here on behalf of

10  Banque Libano-Francaise, and Bank Audi.

11             THE COURT:  Okay.  Nice to meet you as well.

12             MR. POLOVOY:  Good afternoon, Your Honor.  Brian

13  Polovoy with Shearman & Sterling LLP on behalf of Bank of

14  Beirut S.A.L.

15             THE COURT:  Mr. Polovoy, I'm afraid I'm going to

16  have to recuse myself.  About 2000 years ago I did have a cup

17  of coffee or two at Shearman & Sterling.

18             MS. ERB:  Your Honor, Nicole Erb with White & Case

19  for Jammal Trust Bank.

20             THE COURT:  Is that everybody?  No.

21             MS. GOLDSTEIN:  One more.  Linda Goldstein of

22  Dechert LLP for BLOM Bank and Fransabank.

23             Good afternoon, Ms. Goldstein.

24             THE COURT:  Well, you know, this is the first one of

25  these -- I say "these cases," but I've been reading all about

1    it in the papers, and my colleagues' opinions, and the
2    opinions of other courts, so I'm sort of curious.
3               Mr. Tolchin, why don't you briefly -- I'll confess,
4    I ordinarily would have read your pleading, but it stared at
5    me for the last few days and it kept saying, please don't read
6    me, please don't read me, but in truth I just ran out of time.
7               I have pretty good sense from your colleagues'
8    letters here of what we're talking about.
9               Forgive me, perhaps you might even touch on your
10   theory of jurisdiction.
11              MR. TOLCHIN:  Judge, it's 203 pages long.
12              THE COURT:  Yes.
13              MR. TOLCHIN:  And I have made the mistake in the
14   past of making a few remarks about a case that were
15   transcribed on the record and then get fed back to me and
16   said, counsel admitted, acknowledged, limited his claims, so
17   I'm going to be very -- very, very careful about that.
18              But there's different claims at different banks and
19   different transactions and different terrorist attacks, but
20   when money is transferred and it transfers through a
21   correspondent bank, the Second Circuit and the New York State
22   Court of Appeals have held that that provides for jurisdiction
23   in New York.
24              THE COURT:  Certainly in some settings.
25              MR. TOLCHIN:  What?

1    THE COURT:  I said certainly in some settings.

2    MR. TOLCHIN:  Right, in some settings.

3    And I don't want to the dare go into each

4    transaction -- I'm not even equipped to do that without really

5    thinking that through, but the Anti-Terrorism Act gives U.S.

6    citizens a claim in federal court when they're victimized by

7    terror attacks outside of the United States, and so here we

8    are.

9    The most important thing to me, procedurally, is

10   that there's another case pending in this court called

11   Bartlett.

12   THE COURT:  I just saw that.

13   MR. TOLCHIN:  Is it?  Which is, if you would have

14   read the complaint in this case and you read the complaint in

15   the Bartlett's case, you would realize that they are first

16   cousins of each other at least, and that case is a little

17   ahead of ours, in that they have a briefing schedule for their

18   motion to dismiss, which was so ordered by the judge there in

19   September, and I believe has all the briefs going in in

20   December, if I'm wrong it's January, but it's not -- it's not

21   so far off.

22   The decision that would be expected in that case,

23   one way or another, may resolve a lot of issues in this case,

24   one way or the other.

25   For example, if the defendants' motion -- just

1   picking an issue -- if one of the defendants' motions for lack

2   of jurisdiction is denied, that decision will be probably

3   binding, if not binding, at least influential.

4           THE COURT: Binding?

5           MR. TOLCHIN: Well, by collateral estoppel on that.

6   They couldn't come and argue -- they can't make a motion and

7   lose and then come and make -- again, I'm making a mistake of

8   getting into -- I don't want to take --

9           THE COURT: Nobody's going to hold you to anything.

10  This is an informal conference.

11          The only reason I have your report, I don't need to

12  read the report, but generally when we have such craft work

13  just to keep everything straight, it's best to have a record.

14          But we're having an informal conversation. Nobody's

15  going to scream.

16          So your theory is that if they lose on the issue

17  that's identical to the issue before me, I can estop them.

18          MR. TOLCHIN: Estopped, or at least it would be

19  heavily influential or would help resolve.

20          THE COURT: I have great respect for Judge Amon, but

21  we haven't always agreed.

22          MR. TOLCHIN: Okay. But at any rate, it would be

23  helpful, and would have the effect of narrowing and focusing

24  the issues in this case.

25          What we thought made sense would be to actually just

1  stay this case until the motion to dismiss is decided in that
2  case.
3         It's not likely to be a very long period of time,
4  but it would give everybody the benefit of the decision from
5  that case before we proceed here, otherwise counsel have told
6  me that the briefs they intend to file are substantially -- I
7  should say some counsel, not all counsel -- have told me that
8  they're going to be filing the same briefs.  They want to file
9  everyone its own motion.
10         That puts me in the position --
11         THE COURT:  We'll see about that.
12         MR. TOLCHIN:  That puts me the position of, you
13  know, hundreds of pages of material and --
14         THE COURT:  If that happens, your brief is not going
15  to be due on December the 23rd.
16         MR. TOLCHIN:  December the 20?
17         THE COURT:  Third.
18         MR. TOLCHIN:  Third?
19         THE COURT:  I think is the proposed schedule.
20         MR. TOLCHIN:  Well, I've never proposed a brief to
21  be due just in the vacation season, but that's what people
22  like to propose.
23         THE COURT:  You know, instinctively that doesn't
24  appeal to me, not that I'm looking for work, but I do have a
25  duty to move forward.

1    Have you discussed this with your colleagues?  Have
2    you all had a chance to weigh in on it?
3           MR. TOLCHIN:  So when the case began, they wanted
4    extensions of time to answer, which we agreed to and we said,
5    you know, we'll agree, just don't give us grief when we want a
6    long time to respond to your motions to dismiss.
7           So the net effect is they've had something like on
8    the order of 300 days to be working on their motions to
9    dismiss, and they want to give it to me in, I don't care if
10   it's three weeks, six weeks, or 12 weeks, it's still not
11   particularly fair.
12          It's a whole lot here.  It's a whole lot of
13   material.  If -- as I said, I'd rather if you stay it to see
14   what happens next door, but if it's not stayed, I'd like a few
15   months to respond to it.
16          THE COURT:  I see.
17          Okay, sir.
18          MR. SIEGFRIED:  Thank you, Your Honor.
19          The banks perceive from a basic simple fundamental
20   proposition, which is if you bring a lawsuit, you should be
21   prepared to prosecute that lawsuit.
22          And if you bring a lawsuit which is based upon
23   events of some 13 years ago, and you file it on the last day
24   of the statute of limitations, and you accuse virtually the
25   entire banking industry of Lebanon of being accomplices in

1    terrorism with the damage that that causes reputationally,
2    that you should be prepared to proceed and deal with a motion
3    to dismiss, because the defendants certainly, given the
4    consequences of those allegations, should have the right to
5    seek the dismissal of those claims, if the dismissal is
6    appropriate.
7              Now, Mr. Tolchin refers to the case next door.  But
8    when he and I discussed this case prior to filing our
9    premotion letter, there were two cases that he said warranted
10   some kind of a stay so that you could have the advantage of
11   the learning from those cases.
12             One of those is *Kaplan versus the Lebanese Canadian*
13   *Bank*, which happens to be across -- which was, I should say,
14   across the river in front of Judge Daniels.  And on
15   September 20th, Judge Daniels issued his decision on a motion
16   to dismiss dismissing that case.
17             And that case, as I suspect Your Honor is aware, is
18   a case brought by the same plaintiffs who are here against a
19   Lebanese bank alleging that his clients were injured by the
20   same rocket attacks, the same provisions of the ATA, primary
21   and secondary liability, the same issues.  And Judge Daniels
22   had, frankly, little difficulty in his decision in parsing
23   through that and dismissing the pleading, and we think that
24   pleading is a roadmap for the dismissal here.
25             Now, Bartlett, by contrast, doesn't justify a stay,

1  doesn't involve these plaintiffs, doesn't involve Lebanon,
2  doesn't involve civilians injured by rocket attacks.
3         What Bartlett involves -- and it's true it is
4  against the same banks -- but what Bartlett involves is a
5  claim by American service personnel serving during the Iraq
6  War who were injured by IEDs placed by paramilitary groups.
7         And while Mr. Tolchin says that Bartlett's in a more
8  advanced state of pleading or proceeding, if what he means by
9  that is that in Bartlett the plaintiffs have amended their
10 complaint, that would be true.
11        Mr. Tolchin doesn't seem to want to amend his
12 complaint.  I asked him that in light of Daniels' decision,
13 and the fact that Bartlett is staying on his complaint.
14        THE COURT:  That's a question I want to speak to you
15 directly about.
16        MR. SIEGFRIED:  And the --
17        MR. TOLCHIN:  Mr. Siegfried knows, as I told him,
18 that we reserve the right to amend the complaint when we get
19 his motion.
20        THE COURT:  Well, we'll talk about that.
21        Go ahead.
22        MR. SIEGFRIED:  And, of course, the motion to
23 dismiss has yet to be briefed in Bartlett.
24        So I don't see this -- other than the fact that they
25 amended the complaint, I don't see how it --

1    THE COURT:  We're going forward on the motions.
2    We're going forward.
3        I think he needs a reasonable schedule.  He needs a
4    little bit more time.
5        But let's talk about your pleading.  I don't want to
6    do this twice.
7        You know what's coming pretty much.  I mean, yes,
8    they've had however many days to prepare the motion papers,
9    that's a fair point.  But you also have a pretty good idea of
10   what's coming, in terms of jurisdictional challenges.
11       So what I want to know is, you know, if we get their
12   motion papers and then you're going give us a new complaint,
13   and then they are going to have to go back.  I'm not going to
14   do that, so I want to be confident that you're comfortable
15   with your pleading at this point in time so we can move
16   forward, make progress, whether I agree with you or not, in
17   terms of your decision.
18       MR. TOLCHIN:  I certainly don't want to prevent
19   myself from being able to amend the complaint.
20       My preference is to see what they have to say, and
21   if I believe I can cure any of it by an amendment, to do so.
22   I think the federal rules allow me to do that.  I understand
23   Your Honor has authority to supersede the federal rules.
24       THE COURT:  Well, yes and no.
25       I don't mean to take away any right you might

1  otherwise have.  But as you stand there now, knowing pretty
2  much from their letters and where they're coming from, in
3  terms of the jurisdictional challenges, certainly, it gives me
4  some comfort to hear, to know that you're comfortable with
5  your pleading in terms of where it stands, jurisdictionally.
6          You have whatever rights the federal rules give you
7  in terms of tendering or moving for an amendment, to file an
8  amendment.  I don't mean to take them away from you, but I
9  don't want to do this twice.
10         It's not worth my time, it's time and money
11 everything else.  You all know what I'm talking about.
12         MR. TOLCHIN:  Jurisdictionally I have no problems.
13 They're not only raising jurisdiction.
14         THE COURT:  Understood.
15         MR. TOLCHIN:  So they are -- they may make arguments
16 which are addressed to the facts, which are, these days,
17 styled as plausibility in that nature, and we may say, okay,
18 look, based on what we pleaded until now, maybe they have a
19 point, but we can allege 52 new things.
20         On the other hand, the amended pleading that
21 Mr. Siegfried recommended -- referenced in the Bartlett case
22 is, you think the one we filed here is long, it's
23 extraordinarily long.  And I don't think -- I don't think
24 anybody wants us to just, you know, willy-nilly turn a
25 200-page pleading into a 500-page pleading, if it's not

1 necessary.

2 THE COURT: I'd prefer a 500-page pleading then two
3 sets of motions to dismiss brought by the 18 different banks
4 and so forth, and costing us not only how much money, but
5 costing us so much time.

6 They're entitled to bring this to an end at a
7 reasonable pace. And if you think you've got an issue in
8 facts that speak to the question of viability of the claims,
9 well maybe you need to amend this now.

10 I want you to give that some thought.

11 MR. TOLCHIN: My preference is to amend it after we
12 get the motion.

13 Your preference governs, but if you're asking me
14 what's my preference, I'm telling you.

15 THE COURT: You see what I'm saying to you, right?

16 This is not ping pong. This is serious business.

17 And, yes, you do have certain parameters under the
18 rules. I'm not suggesting that you be deprived of them. But
19 on the other hand, we pretty much know what this case is
20 about, in what jurisdiction this is going to be, and in terms
21 of liability of the claims as the claim's stated.

22 I think it's pretty -- I say that now, I may not say
23 that as I'm pouring through the motion papers, but I think
24 it's pretty straightforward.

25 MR. BERGER: May I be heard on that, Your Honor?

1    THE COURT: Yes, sir.

2    MR. BERGER: Mitchell Berger for MEAB Bank, sued as
3 Middle East and Africa Bank.

4    One reason in particular why we would have like to
5 have amendment done now, if it's going to occur, is that the
6 structure of this complaint is that there are four counts.

7    The third one is a conspiracy count. And at the
8 moment, a conspiracy count is only against my client and
9 against Mr. Sullivan's client, SGBL.

10    Bartlett, that was the structure of the conspiracy
11 count as well. And when Mr. Tolchin says, well, they're sort
12 of first cousins, they were actually identical twins when they
13 were filed.

14    And we want to know if he's going to amend the way
15 it was amended in Bartlett, which was after the motions to
16 dismiss were made, the plaintiffs in Bartlett altered the
17 conspiracy counts.

18    So it was no longer just against my client and
19 Mr. Sullivan's client, but against all of the defendants, and
20 that dramatically changes how the group of banks is going to
21 approach this. And it's also going to dramatically affect
22 efficiency.

23    One of Mr. Tolchin's complaints is he doesn't want
24 to deal with multiple separate briefs. Well, if he's going to
25 amend his complaint in a way that alters the counts that

1   necessitate separate briefs, then that's going to produce
2   efficiency as well.  But one way or the other we ought to
3   know.
4           THE COURT:  Well, what I'm going to suggest, and
5   what I do suggest, is that you take some time, a couple of
6   weeks, and think seriously about this.
7           Because if I get a willy-nilly effort, and I don't
8   mean to suggest I'm going to, we're going to amend and get
9   more facts.
10          Have these facts at your disposal.  You have a
11  pretty good idea of what kind of issues are currently going to
12  be briefed, and then I want that amendment now, or within a
13  reasonable period of time.
14          But if you think that you're comfortable with the
15  current pleading so much so that we can make serious progress
16  in terms of reading a resolution, all well and good.  And all
17  the time appreciated, you do have certain prerogatives, and I
18  have certain discretion when it comes to tweaking and
19  completing down the road.
20          I think it's worth taking the time now and thinking
21  seriously if you've got more meat that you want to put on
22  those bones, put them on the bones, and then we can have it
23  out.
24          So I'm asking you to take the next couple weeks,
25  Mr. Tolchin, and then if you can get with your colleagues...

1              MR. TOLCHIN:  Okay.

2              THE COURT:  And then, assuming we're going forward

3     immediately, agree on a reasonable schedule.  Give him more

4     time.  Certainly not December 23rd.  I'm not going to be

5     reading them on December 23rd.

6              Build in enough time for Mr. Tolchin.  If you can't

7     come to an agreement, sure, let me know, and I'll impose the

8     schedule.  And then I need some time with the briefs before

9     you reach agreement.

10             And the other thing is, can you coordinate these

11    filings --

12             MR. SIEGFRIED:  Of course.  Of course.

13             THE COURT:  -- on the calendar.

14             MR. TOLCHIN:  By "coordinate," do you mean a joint

15    filing, or they all file at once?

16             THE COURT:  I mean coordinate.

17             I'm not imposing a requirement for one side, but I

18    don't want repetitive, repetitive, repetitive filings.

19             MR. SIEGFRIED:  And, Your Honor, I think it's fair

20    to say that the defendants who have -- and the pleasure

21    working with my cocounsel are all aware that submitting

22    duplicate briefs making all of the same arguments to you will

23    probably not endear us to the Court, so we will be, of course,

24    efficient.

25             And as I understand it, therefore, what we are going

1   to be discussing with Mr. Tolchin is either he's going to tell
2   us he needs a couple of weeks or whatever period to amend his
3   complaint, or that he is standing on his pleading and then a
4   schedule, depending upon which of those two options he's
5   planning to take.
6              THE COURT:  Two weeks to consider his pleading.  If
7   he's prepared to go forward as is, fine, agree on a schedule.
8   If you can't, call Ellie, we'll impose it.
9              MR. TOLCHIN:  Can we make it three weeks, the 7th?
10             THE COURT:  Three weeks to what?
11             MR. TOLCHIN:  To the 7th.
12             THE COURT:  To fish or cut bait on the pleading?
13             MR. TOLCHIN:  Yes.
14             THE COURT:  Three weeks.
15             You know, I always try give lawyers what they
16  request, and then hold them to it.
17             MR. SIEGFRIED:  Thank you, Your Honor.
18             THE COURT:  Anything else?
19             MR. SIEGFRIED:  That's it.
20             THE COURT:  Well, it's an interesting matter.  I
21  look forward to seeing you again.
22             THE COURTROOM DEPUTY:  I'm going to ask you to put
23  that in writing, if you're going to amend by November 7th.
24             To be the electronically filed not later than --
25             THE COURT:  You don't have to amend by November 7th.

1          THE COURTROOM DEPUTY:  No, no, just to advise if he
2  is going to.
3          MR. TOLCHIN:  Okay.
4          THE COURT:  I just want to make sure that we're all
5  clear.
6          So you're going to advise us by way of an electronic
7  bounce, a letter to Judge Dearie, whether you're going to
8  amend or not, and to be electronically filed by November 7th,
9  not later than 3 p.m.
10         Okay, we don't like 11:59 p.m. filings.  When we say
11 "close of business," we mean 5, unless like right now we say
12 3:00 or 2:00.
13         So to make sure we're all on the same page, you all
14 have my name and my telephone number, if I can help, feel free
15 to give me a call.
16
17         (Whereupon, the matter was concluded.)
18
19                  *     *     *     *     *
20
   I certify that the foregoing is a correct transcript from the
21 record of proceedings in the above-entitled matter.
22
23    s/ Linda D. Danelczyk                    October 20, 2019
24      LINDA D. DANELCZYK                          DATE
25