UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LELCHOOK, *et al.*,

                                        Plaintiffs,

                    -against-                                    19-cv-00033-RJD-SJB

SOCIETE GENERALE DE BANQUE AU LIBAN
SAL,

                                        Defendant.

---

**REPLY IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT SOCIÉTÉ
GÉNÉRALE DE BANQUE AU LIBAN S.A.L.**

Dated:  July 7, 2020                          **ASHCROFT LAW FIRM, LLC**

                                              Michael J. Sullivan
                                              Brian J. Leske
                                              200 State Street, 7th Floor
                                              Boston, MA 02109
                                              T:  617-573-9400
                                              msullivan@ashcroftlawfirm.com
                                              bleske@ashcroftlawfirm.com

                                              *Counsel for Société Générale de
                                              Banque au Liban S.A.L.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

I. THIS COURT LACKS PERSONAL JURISDICTION OVER SGBL ...................................... 3

    A. Personal Jurisdiction Is Lacking Because State Law Would Not Confer Jurisdiction
       over SGBL .............................................................................................................. 3

        1.  New York law governs this jurisdictional question ................................................ 3

        2.  The FAC must be dismissed because under New York law, successor liability
           does not create and confer personal jurisdiction .................................................. 4

        3.  Plaintiffs' reliance on federal law and cases that do not recognize or apply
           governing state law is misplaced ......................................................................... 4

        4.  A recent state appellate opinion shows that a "successor by merger," but not
           purchaser of assets and liabilities, might be subject to personal jurisdiction in
           New York ........................................................................................................... 6

        5.  *Dicta* in *U.S. Bank* explains that the exercise of personal jurisdiction may be
           proper where a defendant's alleged successor liability "derives from a merger
           with the predecessor" ......................................................................................... 7

        6.  The narrow "inherit[ed] jurisdictional status" exception recognized by some
           New York courts does not apply here ................................................................... 9

        7.  Jurisdictional discovery is unnecessary and unwarranted ................................... 10

    B. The Exercise of Personal Jurisdiction Based on Alleged Successor Status Violates
       Federal Due Process ............................................................................................ 11

II. ALTERNATIVELY, THIS COURT MAY APPLY THE *NORTON* RULE AND DISMISS
    THE FAC WITHOUT DECIDING THE PERSONAL JURISDICTION QUESTION ......... 12

III. PLAINTIFFS FAIL TO STATE A SUCCESSOR LIABILITY CLAIM ............................ 14

    A. This Court Should Not Imply the Availability of Successor Liability in the Absence of
       Explicit Congressional Authorization .................................................................... 14

i

B. Plaintiffs Fail to Allege Facts Plausibly Showing Successor Liability............................ 16

C. Plaintiffs' Claims Fail Because the FAC Does Not Allege Facts Plausibly Showing
     That LCB Has Liability under the ATA .......................................................................... 17

CONCLUSION.................................................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbacor, Inc. v. Miller*,
 No. 01 CIV. 0803 (JSM), 2001 WL 1006051 (S.D.N.Y. Aug. 31, 2001) ........................... 9, 10

*Applied Hydro–Pneumatics v. Bauer Mfg.*,
 416 N.Y.S.2d 817 (N.Y. App. Div. 2d Dep't 1979) ........................................... 9, 10

*Barnhart v. Sigmon Coal Co.*,
 534 U.S. 438, (2002) ................................................................................. 15

*Boim v. Holy Land Found. For Relief & Dev.*,
 549 F.3d 685 (7th Cir. 2008) ........................................................................ 14

*BRG Corporation v. Chevron U.S.A., Inc.*,
 82 N.Y.S.3d 798 (N.Y. App. Div. 4th Dep't 2018) ........................................ *passim*

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) ................................................................................. 12

*Cargo Partner AG v. Albatrans, Inc.*,
 352 F.3d 41 (2d Cir. 2003) ............................................................................ 8

*Center for Reproductive Law and Policy v. Bush*,
 304 F.3d 183 (2d Cir. 2002) ................................................................ 2, 12, 13

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
 511 U.S. 164 (1994) ................................................................................. 14

*Chloé v. Queen Bee of Beverly Hills, LLC*,
 616 F.3d 158 (2d Cir. 2010) .......................................................................... 3

*D.H. Blair & Co. v. Gottdiener*,
 462 F.3d 95 (2d Cir. 2006) ............................................................................ 5

*EEOC v. Arabian American Oil Co.*,
 499 U.S. 244 (1991) ................................................................................. 15

*Erie R. Co. v. Tompkins*,
 304 U.S. 64 (1938) .................................................................................... 4

*Fly Shoes v. Bettye Muller Designs*,
 No. 14 CIV. 10078 LLS, 2015 WL 4092392 (S.D.N.Y. July 6, 2015)...................... 5

*Gentry v. Kaltner*,
    No. 17-CV-8654 (KMK), 2020 WL 1467358 (S.D.N.Y. Mar. 25, 2020) ............................ 6, 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ...................................................................................................... 12

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) .................................................................................................. 4, 11

Kaplan v. Al Jazeera,
    No. 10-cv-5298, 2011 WL 2314783 (S.D.N.Y. June 7, 2011) .................................. 1

*Kaplan v. Cent. Bank of the Islamic Rep. of Iran*,
    No-10-cv-00483 (D.D.C. Sept. 30, 2016) .................................................................. 1

*Kaplan v. Central Bank of the Islamic Rep. of Iran*,
    No. 19-cv-03142-IGL (E.D.N.Y. Sept. 5, 2019).......................................................... 1

*Kaplan v. Hezbollah*,
    No. 19-cv-03187-BMC (E.D.N.Y. Feb. 24, 2020) ...................................................... 1

*Kaplan v. Lebanese Canadian Bank SAL*,
    405 F. Supp. 3d. 525 (S.D.N.Y. 2019) ...................................................................... 1

*Kaplan v. The Central Bank of Islamic Rep. of Iran*,
    896 F.3d 501 (D.C. Cir. 2018) ................................................................................ 1

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ................................................................................................ 12

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998) .................................................................................... 4

*Lelchook v. Lebanese Canadian Bank SAL*,
    Case 1:18-cv-12401 (S.D.N.Y. 2018) ...................................................................... 1

*Leon v. Shmukler*,
    992 F. Supp. 2d 179 (E.D.N.Y. 2014)..................................................................... 5, 6

*LiButti v. United States*,
    178 F.3d 114 (2d Cir. 1999) .................................................................................... 6

*Licci v. American Express Bank Ltd.*,
    No. 19-3522 (2d Cir. 2019) .................................................................................. 1, 17

*Licci v. Lebanese Canadian Bank*, SAL,
    984 N.E.2d 893 (N.Y. 2012) .................................................................................. 5

*Lovejoy v. Murray,*
 70 U.S. 1 (1865) .................................................................................................... 14

*Matter of Gronich & Company, Inc. v. Simon Property Group, Inc.,*
 119 N.Y.S.2d 456 (N.Y. App. Div. 1st Dep't 2020) ................................... 6, 7, 8, 10

*McDonald v. N.Y. Reg'l Rail Corp.,*
 No. 05-CV-3521 SLT RER, 2015 WL 2091841,  (E.D.N.Y. Apr. 30, 2015) ........................... 5

*Morrison v. Nat'l Austl. Bank Ltd.,*
 561 U.S. 247 (2010) .............................................................................................. 15

*New York v. Nat'l Serv. Indus., Inc.,*
 352 F.3d 682 (2d Cir. 2003) .................................................................................. 15

*Norton v. Mathews,*
 427 U. S. 524 (1976) ................................................................................... 2, 12, 13

*Pinter v. Dahl,*
 486 U.S. 622 (1988) .............................................................................................. 14

*RJR Nabisco, Inc. v. European Community,*
 136 S. Ct. 2090 (2016) .......................................................................................... 15

*Rothstein v. UBS AG,*
 708 F.3d 82 (2d Cir. 2013) .............................................................................. 1, 14

*Rush v. Savchuk,*
 444 U.S. 320 (1980) .............................................................................................. 11

*Schenin v. Micro Copper Corp.,*
 272 F. Supp. 523 (S.D.N.Y. 1967) ................................................................... 9, 10

*Schumacher v. Richards Shear Co.,*
 451 N.E.2d 195 (N.Y. 1983) ................................................................................... 8

*Semenetz v. Sherling & Walden, Inc.,*
 801 N.Y.S.2d 78 (N.Y. App. Div. 5th Dep't 2005) ....................................... *passim*

*Societe Generale v. Florida Health Sciences Ctr.,*
 No. 03 CIV 5615 (MGC), 2003 WL 22852656 (S.D.N.Y. Dec. 1, 2003) .......... 9, 10

*SPV Osus Ltd. v. UBS AG,*
 882 F.3d 333 (2d Cir. 2018) ........................................................................... 11, 13

*Steel Co. v. Citizens for a Better Environment,*
 523 U.S. 83 (1998) ........................................................................................ 12, 13

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ................................................................................ 13, 14

*Time Warner Cable. v. Networks Grp.*,
    No. 09 CIV 10059 DLC, 2010 WL 3563111 (S.D.N.Y. Sept. 9, 2010) .................................... 5

*Touche Ross & Co. v. Redington*,
    442 U.S. 560 (1979) .................................................................................... 15

*U.S. v. Bestfoods*,
    524 U.S. 51 (1998) ..................................................................................... 16

*United States Bank Nat'l Ass'n v. Bank of Am. Nat'l Ass'n*,
    916 F.3d 143 (2d Cir. 2019) ................................................................... *passim*

*Vasquez v. Ranieri Cheese Corp.*,
    No. 07-CV-464-ENV-VVP, 2010 WL 1223606 (E.D.N.Y. Mar. 26, 2010) ........................... 8

*Vista Food Exch., Inc. v. Champion Foodservice, LLC*,
    124 F. Supp. 3d 301 (S.D.N.Y. 2015) ................................................................ 11

*Walden v. Fiore*,
    571 U.S. 277 (2014) .................................................................................. 11, 12

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317, 335 (2d Cir. 2016) ...................................................................... 12

## Statutes

18 U.S.C. §§ 2333(a) ......................................................................................... 15

18 U.S.C. §§ 2333(d)(2) ..................................................................................... 15

NY CPLR 5225(b) ............................................................................................... 7

## Rules

Federal Rule of Civil Procedure 25 ......................................................................... 6

# INTRODUCTION

This Court need not reach the merits of Plaintiffs' Anti-Terrorism Act ("ATA") claims because this successor-liability lawsuit against Defendant Société Générale De Banque Au Liban SAL ("SGBL") may be dismissed on several threshold grounds.[1] Plaintiffs' arguments in their Opposition ("Opp.") do not change this result.[2]

For a federal court sitting in New York to assert personal jurisdiction over SGBL, a nonresident defendant, Plaintiffs must satisfy the requirements of *both* New York's long-arm statute and the Due Process Clause of the United States Constitution. Plaintiffs cannot satisfy the first step of the jurisdictional analysis because New York law does not recognize alleged successor liability arising from an asset-and-liability purchase as a basis for the exercise of personal jurisdiction. Plaintiffs' contention that state law is irrelevant to resolve the jurisdictional question has no support under Second Circuit precedent or in our federal system. Because successor liability is Plaintiffs' sole jurisdictional theory, that ends this Court's inquiry and the FAC does not state a *prima facie* case of personal jurisdiction. Even so, nor does Plaintiffs' jurisdictional imputation

---

[1] In addition to *Kaplan v. Lebanese Canadian Bank SAL*, 405 F. Supp. 3d 525 (S.D.N.Y. 2019), *appeal filed sub nom, Licci v. American Express Bank Ltd.*, No. 19-3522 (2d Cir. 2019) (briefing underway; appeal limited to dismissal of aiding-and-abetting claims), and *Lelchook v. Lebanese Canadian Bank SAL*, Case 1:18-cv-12401 (S.D.N.Y. 2018) (stayed), which are discussed in SGBL's Memorandum of Law In Support of its Motion to Dismiss ("SGBL MOL"), at 8–13, this lawsuit is one of many filed by the so-called *Kaplan* Plaintiffs, Opp. at 9 n.11, in different jurisdictions over the past several years. Each of these suits was dismissed on Rule 12(b)(6) motions or for failure to prosecute, voluntarily dismissed, or resulted in a default judgment. *See, e.g., Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013); *Kaplan v. The Central Bank of Islamic Rep. of Iran*, 896 F.3d 501 (D.C. Cir. 2018); *Kaplan v. Al Jazeera*, No. 10-cv-5298, 2011 WL 2314783 (S.D.N.Y. June 7, 2011); Mem. Dec. & Order, *Kaplan v. Hezbollah*, No. 19-cv-03187-BMC (E.D.N.Y. Feb. 24, 2020), Docket No. 103; Clerk's Entry of Default, *Kaplan v. Central Bank of the Islamic Rep. of Iran*, No. 19-cv-03142-IGL (E.D.N.Y. Sept. 5, 2019), Docket No. 86; Order & Judgment, *Kaplan v. Cent. Bank of the Islamic Rep. of Iran*, No-10-cv-00483 (D.D.C. Sept. 30, 2016), Docket No. 65.

[2] Plaintiffs devote sixteen opening pages to the alleged conduct of Lebanese Canadian Bank, SAL ("LCB"), SGBL's alleged predecessor. Their strategy appears to be to convince the Court that because LCB was a bad actor, the successor-liability claims against SGBL should survive. But LCB's alleged conduct is irrelevant to whether the first amended complaint ("FAC") states a *prima facie* case of personal jurisdiction or is barred by preclusion principles. Equally troubling, Plaintiffs now describe LCB as a "rogue bank" on their very first page, but that cannot be reconciled with the original complaint against almost a dozen Lebanese banks, alleging they all committed acts of international terrorism and aided and abetted and conspired with Hezbollah. Dkt. 1, ¶¶ 36–168.

theory comport with federal due process because it improperly relies on the contacts and alleged conduct of a third party—SGBL's alleged predecessor—and SGBL's conduct outside the forum—a corporate transaction in Lebanon—to establish personal jurisdiction.

This Court alternatively may assume (without deciding) the personal jurisdiction question and dismiss Plaintiffs' claims under the rule announced in *Norton v. Mathews*, 427 U. S. 524 (1976), as adopted in this Circuit in *Center for Reproductive Law and Policy v. Bush*, 304 F.3d 183 (2d Cir. 2002) ("*Center*"). The *Norton* rule applies, where, as here, the result is "foreordained" because it already has been decided on the merits, a point Plaintiffs largely concede. This Court consequently would not be using the "pretermission of the jurisdictional question as a device for reaching a question of law that otherwise would have gone unaddressed." *Center*, 304 F.3d at 194 (internal quotation marks omitted).

Plaintiffs' successor-liability-based claims also fail to state a claim because Congress made no mention in the ATA of extending its reach beyond primary and secondary liability to include successor liability and, by extension, did not authorize U.S. courts to adjudicate entirely foreign corporate law matters between entirely foreign corporations. Plaintiffs fail to articulate why the interpretation of the ATA and its concomitant adjudication and imposition of a federal liability against a foreign-asset purchaser is not governed by the presumption against extraterritoriality—a statutory cannon that limits a federal statute's extraterritorial reach to its express terms and instructs courts to apply a bright-line rule of dismissal where an express authorization by Congress is absent. Plaintiffs' claims additionally fail because the allegation that SGBL is the successor-in-interest to LCB's ATA liability is both conclusory and implausible based upon Plaintiffs' own allegations and facts upon which this Court may take judicial notice.

**ARGUMENT**

**I.   THIS COURT LACKS PERSONAL JURISDICTION OVER SGBL**

Plaintiffs do not state a *prima facie* case of personal jurisdiction because the sole basis for

jurisdiction—"successor personal jurisdiction" arising from an asset-and-liability purchase—is not

recognized under New York law. Plaintiffs' primary argument that "[t]his is a federal question

case under the ATA, and personal jurisdiction is governed by federal, not state, law" is just plain

wrong. Opp. at 27. Although the Court need not reach this issue, Plaintiffs' imputation theory also

would violate federal due process principles.

**A. Personal Jurisdiction Is Lacking Because State Law Would Not Confer
   Jurisdiction over SGBL**

**1.   New York law governs this jurisdictional question**

"To determine personal jurisdiction, a federal district court applies the long-arm statute of

the state in which it sits." *United States Bank Nat'l Ass'n v. Bank of Am. Nat'l Ass'n*, 916 F.3d

143, 149 (2d Cir. 2019) ("*U.S. Bank*") (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d

158, 163 (2d Cir. 2010)). The rule applies equally to cases involving a federal question, and a

plaintiff must satisfy state standards before satisfying federal constitutional standards:

> To determine personal jurisdiction over a non-domiciliary in a case involving a
> federal question, the Court must engage in a two-step analysis. *See Best Van Lines,
> Inc. v. Walker*, 490 F.3d 239, 243–44 (2d Cir. 2007). First, we apply the forum
> state's long-arm statute. *See id.* at 244; *Sunward Elecs., Inc. v. McDonald*, 362 F.3d
> 17, 22 (2d Cir. 2004).
>
> \* \* \*
>
> If the long-arm statute permits personal jurisdiction, the second step is to analyze
> whether personal jurisdiction comports with the Due Process Clause of the United
> States Constitution.

*Chloé*, 616 F.3d at 163–64; *see also Best Van Lines*, 490 F.3d at 242 (courts "look first to the law

of the State of New York, in which the district court sits[;]" "[i]f, but only if, our answer is in the

affirmative, we must then determine whether asserting jurisdiction under that provision would be

3

compatible with requirements of … due process") (citing *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)).

### 2. The FAC must be dismissed because under New York law, successor liability does not create and confer personal jurisdiction

Alleged successor liability is not a basis for exercising personal jurisdiction in New York. Instead, New York appellate courts have concluded that the principles and common-law exceptions under which a corporate successor may be subject to liability for its predecessor's torts "deal with the concept of tort liability, not jurisdiction." *BRG Corporation v. Chevron U.S.A., Inc.*, 82 N.Y.S.3d 798, 799 (N.Y. App. Div. 4th Dep't 2018). A corporate successor therefore is only subject to liability for the torts of its predecessor in a forum having *in personam* jurisdiction over the successor, because successor-liability rules "do not and cannot confer such jurisdiction over [the] successor in first instance." *Semenetz v. Sherling & Walden, Inc.*, 801 N.Y.S.2d 78 (N.Y. App. Div. 5th Dep't 2005), *aff'd on other grounds*, 851 N.E.2d 1170 (N.Y. 2006). Because alleged successor liability is Plaintiffs' sole basis for personal jurisdiction, FAC ¶ 16, and New York law does not recognize that broad jurisdictional theory, the FAC must be dismissed.

### 3. Plaintiffs' reliance on federal law and cases that do not recognize or apply governing state law is misplaced

To escape this straightforward jurisdictional analysis, Plaintiffs argue that "personal jurisdiction is governed by federal, not state, law," Opp. at 27, and cite to several federal opinions referring to federal law in support of their jurisdictional imputation theory. But Plaintiffs' argument begins from a false premise because, as explained above, federal law does *not* control in the first instance, state law does. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("There is no federal general common law.").[3]

---

[3] Plaintiffs themselves recognize the fundamental flaw of their argument when they acknowledge, *see* Opp. at 27 n.19, that the decision upon which they rely to impute personal jurisdiction on SGBL, *Licci v. Lebanese Canadian Bank*,

The federal decisions relied upon by Plaintiffs, Opp. at 18–19, are inapt for additional, related reasons. *First*, all of them (except for one, discussed below) predate the 2018 appellate decision in *BRG*, which reaffirmed the earlier state appellate ruling in *Semenetz* rejecting Plaintiffs' jurisdictional theory. *Second*, none of them analyze the jurisdictional imputation question as a matter of New York law, which must be satisfied *before* considering whether the exercise of jurisdiction comports with federal due process. *See Leon v. Shmukler*, 992 F. Supp. 2d 179, 190 (E.D.N.Y. 2014) (no analysis of *Semenetz* or New York's rejection of imputation of predecessor's jurisdictional status; court relies solely on *dicta* in an earlier federal opinion); *McDonald v. N.Y. Reg'l Rail Corp.*, No. 05-CV-3521 SLT RER, 2015 WL 2091841, at *2 (E.D.N.Y. Apr. 30, 2015) (same; court relies on *Leon*, *supra*); *Time Warner Cable. v. Networks Grp.*, No. 09 CIV 10059 DLC, 2010 WL 3563111, at *6 (S.D.N.Y. Sept. 9, 2010) (no analysis of New York law; court found alleged successors "are subject to personal jurisdiction because they agreed to the forum selection clause"); *Fly Shoes v. Bettye Muller Designs*, No. 14 CIV. 10078 LLS, 2015 WL 4092392, at *2 (S.D.N.Y. July 6, 2015) (no analysis of New York law; court relies on *Time Warner*, *supra*); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *35 (S.D.N.Y. Oct. 20, 2015) (same; court found "the forum selection clause will bind the contracting party's successor in interest"). *Third*, as parenthetically noted *supra*, several decisions found independent bases for the exercise of personal jurisdiction, such as forum selection clauses that bound the successor. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95,103 (2d Cir. 2006) (it is well established that "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements"). And the only federal case that post-

---

SAL, 984 N.E.2d 893, 985 (N.Y. 2012), is a state decision that "found jurisdiction over LCB under New York law." In fact, the jurisdictional question had been certified by the U.S. Court of Appeals for the Second Circuit to the New York Court of Appeals, demonstrating that the analysis, including in federal question cases, begins—and in this case, ends—with how state law would resolve the issue.

dates *BRG*, *Gentry v. Kaltner*, No. 17-CV-8654 (KMK), 2020 WL 1467358, at *7 (S.D.N.Y. Mar. 25, 2020), likewise fails to consider New York law and merely repeats (incorrect) statements of law in the pre-*BRG* opinions.

Virtually all the above cases appear to rely upon and carry forward a misunderstanding and misquotation of *dicta* in *LiButti v. United States*, 178 F.3d 114, 123–24 (2d Cir. 1999), a case that arose in an entirely different context involving Federal Rule of Civil Procedure 25.[4] For example, in *Leon*, the earliest case upon which Plaintiffs rely, the district court first observed (in a passage repeated in *Gentry*, *Time Warner*, and by Plaintiffs, Opp. at 18) that: "*It is well settled that*" a court may gain personal jurisdiction over a successor without regard to its minimum contacts, quoting and citing to *LiButti*. But *LiButti* does not say that—the opinion simply offered the observation that: "*In several cases* involving the question of *whether a person could be substituted or joined under Rule 25(c)*, *various courts have held*" that jurisdiction could be conferred. *LiButti*, 178 F.3d at 123 (emphasis added). *LiButti* thus makes *no* pronouncement—let alone one that would carry any precedential value in the instant case involving a direct claim against a defendant in the first instance—that successorship principles are enough to confer personal jurisdiction under either state or federal law.

### 4. A recent state appellate opinion shows that a "successor by merger," but not purchaser of assets and liabilities, might be subject to personal jurisdiction in New York

Pivoting away from their misplaced "black-letter" federal successor personal jurisdiction law, Opp. at 18, Plaintiffs argue that a new state appellate opinion supports the exercise of personal jurisdiction over SGBL. *See Matter of Gronich & Company, Inc. v. Simon Property Group, Inc.*,

---

[4] The *LiButti* jurisdictional observations are *dicta* because the Court ruled that even assuming the imputation arguments were properly before it, and even assuming the reasoning in the cited Rule-25 cases applied, the defendant was *not* a successor under New Jersey state law, which governed. *LiButti*, 178 F.3d at 124.

119 N.Y.S.2d 456 (N.Y. App. Div. 1st Dep't 2020). It does not for the simple reason that *Gronich* involved the exercise of personal jurisdiction over the sole corporate entity that survived a merger, not a successor by virtue of an asset-and-liability purchase.

In *Gronich*, a judgment creditor (the petitioner) sought to enforce its judgment against the alleged successor corporation of the judgment debtor (the respondent) under NY CPLR 5225(b). *Id.* The Court found that personal jurisdiction existed based on respondent's "status as **successor by merger**." *Id.* (emphasis added); *see also id.* (allowing a judgment creditor "to commence a special proceeding pursuant to CPLR 5225 (b) to enforce a judgment against such a **successor by merger**") (emphasis added). *Gentry*'s ruling thus is narrow and does not support the exercise of personal jurisdiction where successor liability is not based on merger and where both companies survive the transaction.[5]

### 5. *Dicta* in *U.S. Bank* explains that the exercise of personal jurisdiction may be proper where a defendant's alleged successor liability "derives from a merger with the predecessor"

Plaintiffs next seek to rely upon *dicta* in *U.S. Bank*, 916 F.3d at 156–58, to suggest that SGBL is subject to personal jurisdiction. Opp. at 27–28.[6] SGBL anticipated this argument in its initial papers, SGBL MOL at 18 n.10, and explained that the majority's view—specifically, that in a suit to enforce a merger partner's earlier contracts, the successor could be subject to personal jurisdiction where the merger partner would have been subject to personal jurisdiction—explicitly

---

[5] Because *BRG* found that a successor by merger was not subject to personal jurisdiction, *see* SGBL MOL at 17 18, *Gronich* may have created a split within the New York appellate departments on jurisdictional imputation based upon a merger. This conflict does nothing to change the outcome in this case because it is undisputed that LCB and SGBL did not merge.

[6] The majority's discussion of jurisdictional imputation is *dicta* because it concluded that defendant Bank of America, N.A., the successor entity following its merger with LaSalle Bank, N.A., had "forfeited, and/or waived" the argument that it was not subject to personal jurisdiction. *U.S. Bank,* 916 F.3d at 156; *see id.* ("Because the issue is forfeited, we do not rule on it.").

limits any jurisdictional imputation to instances where there has been a merger and the successor is the sole "entity that survives the merger." *U.S. Bank*, 916 F.3d at 155; *see also id.* at 156 ("while successor liability based on acquisition of a predecessor's assets does not necessarily make the defendant also amenable to jurisdiction where the predecessor's actions would have made the predecessor subject to specific jurisdiction, the rule is different where the successor liability of the defendant rule derives from a merger with the predecessor").[7] This makes sense because there arguably is an independent basis for personal jurisdiction: "a successor by merger is deemed by operation of law to be both the surviving corporation and the absorbed corporation." *U.S. Bank*, 916 F.3d at 156.

Here, there was no merger between SGBL and LCB as a matter of law, *see* SGBL MOL at 5 n.3, 6, 18 n.9, 39, because two companies survived the all-cash transaction, there was no continuity of ownership by LCB or its shareholders, and SGBL exercised no control, oversight, or corporate relationship with LCB afterwards, as Plaintiffs either concede or do not dispute. *See Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 47 (2d Cir. 2003) (under New York law, "continuity of ownership is the essence of a merger[;]" "[i]t is, by contrast, the nature of an asset sale that the seller's ownership interest in the entity is given up in exchange for consideration; the parties do not become owners together of what formerly belonged to each."); *Schumacher v. Richards Shear Co.*, 451 N.E.2d 195, 198 (N.Y. 1983) (no merger where predecessor survives the transaction as "a distinct, albeit meager, entity"); *Vasquez v. Ranieri Cheese Corp.*, No. 07-CV-

---

[7] As previously explained, SGBL MOL at 17–18, the *U.S. Bank* majority's view that merger may provide a basis for an imputation of personal jurisdiction—a position the state court in *Gronich* later accepted and adopted—did not appear to be a correct statement of New York law at the time, as the concurrence in *U.S. Bank* observed. *U.S. Bank*, 916 F.3d at 156; *see id.* at 159–60 (Chin, J., concurring) (citing *BRG*, 82 N.Y.S.3d at 799). In fact, contrary to the majority's belief, *BRG* involved a merger, with the successor assuming "all debts, liabilities and duties of [the predecessor]," yet even under those circumstances, the court unanimously held that it could not and would not impute the predecessor's jurisdictional status to confer personal jurisdiction upon the successor. *See BRG*, 82 N.Y.S.3d at 799.

464-ENV-VVP, 2010 WL 1223606, at *13 (E.D.N.Y. Mar. 26, 2010) ("there is no continuity of ownership where assets are purchased solely with cash") (citation omitted).[8]

### 6. The narrow "inherit[ed] jurisdictional status" exception recognized by some New York courts does not apply here

Invoking *U.S. Bank* and *Semenetz*, Plaintiffs argue in two sentences that SGBL is subject to personal jurisdiction because "in certain circumstances the successor corporation may inherit its predecessor's jurisdictional status," and those circumstances include where the successor "is subject to all the liabilities of the acquired companies." Opp. at 28. This is an incorrect statement of New York law.

In each of the cases cited by *Semenetz*,[9] the successor corporation is *not* subject to personal jurisdiction simply because it might be responsible for paying the judgment (*e.g.*, because an exception to the successor nonliability rule might apply), or because the successor might have assumed the predecessor's assets and liabilities. *Accord Societe Generale*, 2003 WL 22852656, at *4 (doubting that "personal jurisdiction over [the successor defendant] should be determined by reference to its predecessor's contacts with New York."). Instead, the successor might be subject to personal jurisdiction because the alleged circumstances have some other independent jurisdictional significance.

---

[8] The Opposition repeats, repeatedly, the FAC allegation that SGBL "stripped [LCB] of its assets," FAC ¶ 128; Opp. at 17, 22, suggesting that LCB was left with nothing if Plaintiffs are successful in their claims. This is knowingly false and disingenuous because Plaintiffs concede that the LCB-SGBL transaction was not a stock swap or a merger of entities leaving LCB with nothing. Instead, LCB and its shareholders received $500 MM+ cash from SGBL, which could have been attached by Plaintiffs who were on notice of the transaction. SGBL MOL at 6–7.

[9] *Semenetz*, 801 N.Y.S.2d at 81, cited the following cases: "*Societe Generale v. Florida Health Sciences Ctr.*, No. 03 CIV. 5615 (MGC), 2003 WL 22852656, *4 (S.D.N.Y. Dec. 1, 2003); *see e.g. Abbacor, Inc. v. Miller*, No. 01 CIV. 0803 (JSM), 2001 WL 1006051, *3 (S.D.N.Y. Aug. 31, 2001); *Applied Hydro–Pneumatics v. Bauer Mfg.*, 416 N.Y.S.2d 817 (N.Y. App. Div. 2d Dep't 1979); *see generally Schenin v. Micro Copper Corp.*, 272 F. Supp. 523, 526 (S.D.N.Y. 1967)[.]"  Each is considered below and do not support Plaintiff's contention.

For example, a successor may be subject to personal jurisdiction in New York where it assumes a predecessor's written contract containing a forum selection clause and the action arises from that contract. *See Societe Generale*, 2003 WL 22852656, at *4 ("personal jurisdiction over the original contracting party had been gained via a forum selection clause" to litigate any contract dispute in New York); *Abbacor, Inc.*, 2001 WL 1006051, at *3 ("Consent may be either express or implied, and typically takes the form of a contractual agreement containing a New York forum selection clause or the defendant's voluntary participation in certain state processes."). In other cases, a successor may be subject to jurisdiction when it performs a predecessor's contracts, constituting a ratification of a predecessor's actions. *See Applied Hydro-Pneumatics*, 416 N.Y.S.2d at 820 ("voluntary election to complete the contracts constituted … ratification" conferring personal jurisdiction). In other words, "[t]he issue was not, as it is here, whether minimum contacts could be transferred, but whether the defendant's assumption of its predecessor's rights and obligations constituted a voluntary adoption of all of the terms of the contracts that the predecessor had executed." *Societe Generale*, 2003 WL 22852656, at *4.

Plaintiffs are therefore wrong when they contend that this narrow exception applies whenever a successor assumes the liabilities of the predecessor. *Accord Schenin*, 272 F.Supp. at 526 (where corporation did not merge, but rather assumed assets and liabilities, plaintiff could sue alleged successor "only where it could be found"). Indeed, this jurisdictional theory was unequivocally rejected in *BRG*, *Semenetz*, and *Gronich*.

### 7.  **Jurisdictional discovery is unnecessary and unwarranted**

As a last resort, Plaintiffs request jurisdictional discovery. That request should be rejected because New York law is clear on the jurisdictional imputation question and Plaintiffs' own existing lawsuits against LCB show there is no plausible basis to believe that SGBL and LCB

merged. *See Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 314 (S.D.N.Y. 2015) ("Where a plaintiff does not establish a prima facie case of jurisdiction, a district court does not err in denying jurisdictional discovery."); *id.* (denying request where "the jurisdictional issues in this case are relatively clear and uncontroverted" based on the complaint's deficiencies); *see supra* at 8–10.

## B. The Exercise of Personal Jurisdiction Based on Alleged Successor Status Violates Federal Due Process

Plaintiffs do not dispute that (a) SGBL has no forum connections, (b) the Lebanese sales-and-purchase agreement between SGBL and LCB has no connection to New York, and (c) the personal jurisdiction theory upon which they rely is based exclusively on imputation and SGBL's alleged status. FAC ¶ 16; Opp. at 24 ("SGBL's successor liability is based on its *status*, not its *conduct*.") (emphasis in original). The exercise of personal jurisdiction under these circumstances would not comport with federal due process principles because it impermissibly would be based on third-party contacts and SGBL's conduct outside the forum in Lebanon. *See Rush v. Savchuk*, 444 U.S. 320, 332–33 (1980) ("Here, however, the defendant has no contacts with the forum, and the Due Process Clause 'does not contemplate that a state may make binding a judgment . . . against an individual or corporate defendant with which the state has no contacts, ties, or relations.' *International Shoe Co. v. Washington*, 326 U.S., at 319[.]").

The Supreme Court long has recognized that constitutional due process limitations "principally protect the liberty of the nonresident defendant." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Personal jurisdiction consequently must be based on the contacts the *defendant* has with the forum. *See Rush*, 444 U.S. at 332 ("[t]he requirements of *International Shoe* . . . must be met as to each defendant"); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) ("'[T]he *defendant's suit-related conduct* must create a substantial connection with the forum State.'")

11

(quoting *Walden,* 571 U.S. at 284) (emphasis added); *see also Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (same); *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original).

These decisions (and others) make clear that to comport with due process, the exercise of personal jurisdiction over a defendant must rest not on conceptual devices, but rather a finding that that defendant's *own* conduct and contacts are sufficient to show "the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (internal quotation marks and brackets omitted). Plaintiffs' imputation theory falls woefully short of this constitutional-minimum test, particularly where the instrument that creates the alleged successor liability has no connection to the forum.

## II. ALTERNATIVELY, THIS COURT MAY APPLY THE *NORTON* RULE AND DISMISS THE FAC WITHOUT DECIDING THE PERSONAL JURISDICTION QUESTION

If it chooses, this Court alternatively may dismiss the FAC without reaching the personal jurisdiction question applying the rule in *Norton*, 427 U. S. at 524 as adopted in *Center*, 304 F.3d at 183. Plaintiffs' position, Opp. at 3, 18 n.16, ignores this exception to the general rule set forth in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 84 (1998), which rejects "hypothetical jurisdiction"—that is, assuming the existence of jurisdiction to address a merits question—in most, but not all, cases.

In *Norton*, the Supreme Court avoided a jurisdictional question and instead dismissed on the merits because it had already decided the merits question in a companion case. *Norton*, 427

12

U.S. at 528–31. In *Center*, the Second Circuit dismissed without reaching an open standing question because a merits argument had been squarely rejected in an earlier case. *Center*, 304 F.3d at 193. The Court in *Center* found that it was acceptable for a court to assume jurisdiction "in those peculiar circumstances where the outcome on the merits has been foreordained" and the court is not "us[ing] the pretermission of the jurisdictional question as a device for reaching a question of law that otherwise would have gone unaddressed." *Id*. at 194 (internal quotation marks omitted). *Center* further affirmed that *Norton* was still good law after *Steel Co.*, observing that *Norton* had been explicitly distinguished in the Supreme Court's opinion. *Id*.

This Court may apply the *Norton* rule here because the result is "foreordained," *Steel Co.*, 523 U.S. at 98, because the *Kaplan* Plaintiffs have conceded that their claims must be dismissed: "[T]he *Kaplan* Plaintiffs therefore do not dispute that unless and until the *Kaplan v. LCB* decision is vacated on appeal, it precludes their ATA successor liability claim against SGBL, which is LCB's privy." Opp. at 31 n.22.[10] Equally so, the result for the so-called *Lelchook* Plaintiffs, Opp. at 31 n.21, is "foreordained" because they are "identically placed," *SPV Osus Ltd.*, 882 F.3d at 347 (Calabresi, J., concurring), having asserted identical causes of actions, legal theories, and allegations to those that have been dismissed in the related *Kaplan* case. The *Norton* rule thus applies on comity or preclusion grounds because "the jurisdictional question could have no effect on the outcome." *Steel Co.*, 523 U.S. at 98.[11]

_____

[10] SGBL has not made an admission that it is the successor-in-interest to LCB's ATA liabilities. *See* Opp. at 31 n.22. SGBL has consistently taken the position that it did not assume those liabilities and Plaintiffs have gone to great lengths to refute that contention. *See* Opp. at 28–30. Solely for the purposes of its preclusion argument at the motion to dismiss stage, SGBL assumes the truth of the successor allegation to show that Plaintiffs face a classic "Hobson's choice"— and in an unwinnable position. If Plaintiffs are correct that SGBL is LCB's successor and therefore in privity with LCB, then Plaintiffs' claims are barred by preclusion principles (as they admit). If, on the other hand, to defeat preclusion, Plaintiffs take the position that SGBL is not a successor and therefore not in privity, then their successor-liability claims fail to state a claim.

[11] While *Taylor v. Sturgell*, 553 U.S. 880 (2008), takes a narrow view of a "virtual representation" theory for purposes of applying non-party preclusion, such determinations are case-specific and Plaintiffs' "day-in-court" theory as it

III.    **PLAINTIFFS FAIL TO STATE A SUCCESSOR-LIABILITY CLAIM**

A. **This Court Should Not Imply the Availability of Successor Liability in the Absence of Explicit Congressional Authorization**

Plaintiffs boldly argue that "SGBL cites no authority for its novel claim that statutory silence precludes successor liability, because none exists." Opp. at 23. This statement is demonstrably false.

As an initial matter, Plaintiffs have the burden to show a legal basis for their claim and they have failed to do so. They cannot point to any authority in the ATA to permit the adjudication of foreign successor-liability questions through a private right of action against an asset-and-liability purchaser, let alone the imposition of federal successor liability on that basis. *See* SGBL MOL at 29–30. Under these circumstances, numerous courts have held that Congressional silence on the imposition of an additional federal liability, such as secondary liability, beyond those specifically mentioned in the statute, "means there is none." *Rothstein*, 708 F.3d at 98; *Boim v. Holy Land Found. For Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (*en banc*) (same).

Plaintiffs attempt to distinguish the aiding-and-abetting liability at issue in *Rothstein* and *Boim* and the alleged successor liability at issue here, Opp. at 24, but both are secondary liabilities—a method by which liability is created "in persons other than the violator of the statute." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 184 (1994) (quoting *Pinter v. Dahl*, 486 U.S. 622, 648 n.24 (1988)). "The fact that Congress chose to impose some forms of secondary liability, but not others, indicates a deliberate congressional choice with which the courts should not interfere." *Central Bank*, 511 U.S. at 184; *see Pinter*, 486 U.S. at 650

---

applies to mass tort litigation where plaintiffs' lawyers unquestionably have control of all plaintiffs, arguments, and the litigation: (1) elevates form over substance; (2) ignores countervailing benefits of judicial efficiency, finality, and consistency; and (3) would allow the same counsel to file the same lawsuit over and over again simply by using a differently named plaintiff until a favorable result is obtained. *Accord Lovejoy v. Murray*, 70 U.S. 1, 18 (1865) (when applying preclusion principles finding significant "that the counsel so employed had exclusive control of the defense of the suit."). *Taylor* should not be read to support such an untenable result.

14

("[w]hen Congress wished to create such [secondary] liability, it had little trouble doing so"); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979) ("when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly"); *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 454 (2002) ("If Congress meant to make a preenactment successor in interest [] liable, it could have done so clearly and explicitly.").

Plaintiffs' implied successor-liability theory relies principally on courts' earlier implication of successor liability in the environmental context. *See New York v. Nat'l Serv. Indus., Inc.*, 352 F.3d 682, 683 (2d Cir. 2003). But a plausible analogy cannot be drawn between CERLCA, a broad remedial domestic statute passed against the backdrop of state corporate law that authorizes damages without regard to fault, and the ATA, a statute that applies extraterritorially and only to culpable actors who are involved in "an act of international terrorism."  *See* 18 U.S.C. §§ 2333(a), 2333(d)(2).

This, in turn, underscores key authority further undermining Plaintiffs' implication argument: the steady line of cases that have concluded that the presumption against extraterritoriality bars the imposition of liability where Congress has not "affirmatively and unmistakably" instructed U.S. law to apply. *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2100 (2016); *see id*. at 2102 ("When a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms."); *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none."); *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 258 (1991) ("Congress's awareness of the need to make a clear statement that a statute applies overseas is amply demonstrated by the numerous occasions on which it has expressly legislated the extraterritorial application of a statute") (collecting examples). Here, because ATA liability is

15

limited to those involved in "an act of international terrorism," and does not "unmistakably" authorize the imposition of federal successor liability and federal courts' adjudication of foreign corporate law issues, that right of action or remedy is unavailable.

### B. Plaintiffs Fail to Allege Facts Plausibly Showing Successor Liability

In addition to an implied successor liability private right of action, Plaintiffs ask this Court to fashion and apply a more relaxed federal rule of liability in ATA cases—a "substantial continuity test"—rather than the traditional test recognized in New York.[12] This argument is squarely foreclosed by Circuit precedent.

In *Nat'l Servs. Indus., Inc.*, 352 F.3d at 685–87, the Second Circuit reversed earlier precedent adopting a federal "substantial continuity test" in the CERCLA context based upon the decision in *U.S. v. Bestfoods*, 524 U.S. 51 (1998). *Bestfoods* rejected application of special federal rules, observing that there is no indication that "the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute." *Bestfoods*, 524 U.S. at 63 (citation and quotation omitted). The Second Circuit found that, unlike in the labor law context, "the substantial continuity test is not a sufficiently well established part of the common law of corporate liability to satisfy *Bestfoods*['] dictate," and therefore cannot be extended to other areas. *Nat'l Servs. Indus., Inc.*, 352 F.3d at 686. That reasoning applies equally to the ATA and its private right of action provision.

Applying instead the traditional test in New York, SGBL rightly argues that the FAC fails to allege facts plausibly showing that it is LCB's successor. Plaintiffs' conclusory allegation is based on one paragraph of one page of what this Court may reasonably infer is a lengthy, complex and confidential corporate asset and liability purchase agreement. This Court may further

---

[12] SGBL assumes at this stage that New York's traditional successor liability applies but reserves the right to argue another jurisdiction's law applies. SGBL MOL at 37 n.13.

recognize that it defies plausibility that SGBL assumed the ATA-related liabilities at issue in this case where LCB has been defending itself from those precise claims in both federal and state court for the past ten years without Plaintiffs or LCB seeking to add SGBL as a party. Nor can or should any negative inference be drawn, from SGBL's decision not to challenge Plaintiffs' conclusory allegations with direct evidence, as Plaintiffs suggest. *See* Opp. 29–30. As explained *supra*, resolution of whether, in fact, SGBL is LCB's successor by virtue of its purchase of certain assets and liabilities is irrelevant because New York law does not confer personal jurisdiction on that basis.

### C.  Plaintiffs' Claims Fail Because the FAC Does Not Allege Facts Plausibly Showing That LCB Has Liability under the ATA

SGBL naturally disagrees with Plaintiffs' view as to the sufficiency of their allegations to state ATA claims against LCB. Because the FAC may be dismissed on other grounds, SGBL is prepared to rely on its initial moving papers in this regard except to note that its arguments on aiding and abetting and conspiracy are not precluded by earlier Second Circuit's rulings in the *Kaplan*/*Licci* line of cases, Opp. at 40, 43. Judge George B. Daniels rejected the same argument in *Kaplan*, correctly observing "[t]he Second Circuit said no such thing," because any assessment either "was in the context of the jurisdictional inquiry" or "in relation to Plaintiffs' ATS [Alien Tort Statute] claims." *Kaplan*, 405 F. Supp. 3d at 536 n.6 (emphasis in original).

SGBL finally observes in closing that the *Kaplan* Plaintiffs have abandoned both their primary and conspiracy ATA-liability claims against LCB on appeal of that decision forever barring on preclusion grounds a successor-liability claim against SGBL based on those alleged liabilities.

### CONCLUSION

This Court should dismiss the FAC in its entirety against SGBL.

17

Respectfully submitted,

**ASHCROFT LAW FIRM, LLC**

By:    <u>/s/ Michael J. Sullivan</u>
Michael J. Sullivan
Brian J. Leske
Ashcroft Law Firm, LLC
200 State Street, 7th Floor
Boston, MA 02109
T: 617-573-9400
<u>msullivan@ashcroftlawfirm.com</u>
<u>bleske@ashcroftlawfirm.com</u>

*Counsel for Defendant Société Générale de*
*Banque au Liban S.A.L.*

18