UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LELCHOOK ET AL,<br>Plaintiffs,<br>vs.<br>SOCIETE GENERALE DE BANQUE AU LIBAN SAL ET AL,<br>Defendants. | 1:19-CV-00033-CBA-VMS<br>BROOKLYN, NY<br>December 17, 2025 |

TRANSCRIPT OF INITIAL CONFERENCE
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES CHIEF MAGISTRATE JUDGE

APPEARANCES (All present by video or telephone):

For the Plaintiffs: ROBERT J. TOLCHIN, ESQ.
THE BERKMAN LAW OFFICE, LLC
111 Livingston Street
Suite 1928
Brooklyn, NY 11201

For the Defendants: MICHAEL SULLIVAN, ESQ.
BRIAN LESKE, ESQ.
ASHCROFT LAW FIRM, LLC
200 State Street
7th Floor
Boston, MA 02109

Melinda Friedland, CDLT-268
eScribers
7227 North 16th Street
Phoenix, AZ 85020
www.escribers.net

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

THE COURT: All right. This case is Lelchook v. Societe Generale De Banque Au Liban Sal, 19-cv-33. Let's start with plaintiff's counsel's appearance.

MR. ROBERT TOLCHIN: Thank you, Your Honor. Robert Tolchin from the Berkman Law Office for the plaintiffs.

THE COURT: Okay. And how about for defendants?

MR. MICHAEL SULLIVAN: Good afternoon, Your Honor. Michael Sullivan and Brian Leske from the Ashcroft Firm on behalf of SGBL.

THE COURT: Okay. All right. So this case has been around for a while. We've had some recent developments. You were dealing with Judge Bulsara in the past, and that was now assigned to me. And you have also had some recent filings with regard to motion practice and, at least based on your proposed scheduling order, you don't really agree about discovery.

So let's start with plaintiff, and if you could fill me in on -- I understand there's some other similar cases going on -- like, what's happening there in terms of discovery, at least there's one other, and how, if at all, that would suggest there should be discovery here or could -- there could be efficiencies, et cetera. But anyway, your plan basically suggests there should be discovery. So if you could map out for me what you'd be looking for and how expansive you see it to be, or not so expansive. And then we'll hear from defendants.

MR. TOLCHIN: Well, everything is incremental, but I can say that where we would start, which we already -- we have actually already served a two-item document demand. You know, the liability here of Society Generale is due to its acquisition of the Lebanese Canadian Bank. And you know, the paperwork, the contracts between Lebanese Canadian Bank and Societe Generale specifically surrounding the acquisition or the merger or whatever it was, that's the starting point. And then secondly, there were some audits of the Lebanese Canadian Bank that have been reported on, and we've requested those.

THE COURT: And what do you think the audit would show?

MR. TOLCHIN: Well, the question is, what assets did they acquire? What liabilities did they acquire? What did they know about? How was our case dealt with? I mean, this case against the Societe Generale is a iteration of a previous -- a preexisting case against Lebanese Canadian Bank. So you know, nobody, says Societe Generale directly did anything. It was this entity that it merged with, acquired, became one with, et cetera.

THE COURT: And so what's your thought? If you got those documents, what would happen at that point?

MR. TOLCHIN: They would certainly -- in the book of Genesis, there's already A begat B and then B begat C. So you know, discovery responses beget discovery responses, but we'd

be on to the next -- to the next step. It would definitely hopefully reveal where some of the dogs lie buried. At least there's a start.

Look, we -- we've been itching to get this case out of the starting gate. We filed this case six years ago. And I don't know. I'll tell you this. When I was young and single, I once dated a female lawyer who worked for Cravath. And she told me that nobody worth their salt answers a complaint less than a year after it was served. That was what she was trained. And in this case, they have done a masterful job, because here we are, six years after it's served, and we are still talking about pre-answer motions. We've already been around that mulberry bush. Now they want to go around it again.

I understand that typically, discovery gets stayed either officially or by -- or de facto while there's a pre-answer motion to dismiss pending. But here, where we've had the motion to dismiss, it's been ruled on, it's been appealed, it -- now they want to do it again. We say, you know, this isn't a -- like, the case isn't a spring chicken now. It's time to at least start discovery, if you wanted to say. Let's get something moving. Even the natural course of a document demand and some interrogatories, initial disclosures, that will get us -- that will take several months in and of itself.

In the meanwhile, there -- whatever is going to happen

with the -- their desire to make a new motion, they may make it, it may be ruled on, they may win, they may lose. It can happen in parallel, but at least let's get initial disclosures and a first round of document demands out, even if we're not going to do depositions at this time or more -- or things that are more involved. We just feel that we need to have some momentum moving the case forward at long last, after all these years.

THE COURT: So just to focus on the particular request that you did make, if it -- you know, what are the branches? If you don't find the evidence that you think should be there, you're giving up the case and -- or you're -- because that's the only place it would be? If you find certain evidence, there should be some particular outcome? I mean, what is it? What's the point of this particular information?

MR. TOLCHIN: This is what we think is a likely source of where to look, where we'd like to do our first inquiries. I am absolutely not prepared to say that if we don't find anything here, that it's all over. It's just we think this is a -- this is likely to be a very good -- very good items to be asking for at this point. And it's where we want to start.

THE COURT: Okay. Let me ask a different question.

MR. TOLCHIN: I'd be happy to serve further demands, but I didn't want to make it complicated. I didn't want to make it seem like I'm burdening anyone. I just asked for two

items to start.

THE COURT: So.

MR. TOLCHIN: And of course, there's initial disclosures. Initial disclosures haven't happened either.

THE COURT: If you were to map out the discovery in the case that there were no stay and it was going full bore, what would the discovery encompass in this case?

MR. TOLCHIN: Did we submit to Your Honor the proposed discovery plan?

THE COURT: You do, but it's basically an argument between you all. It doesn't suggest what should be covered. So what would -- you know, how would you do this --

MR. TOLCHIN: The way I understood it is that the defendants' position is there should be no discovery; there should be a stay. But I don't think that -- I mean, I don't want to speak for them, but I don't think that they object to the general structure of discovery. If there were to be no stay, I think they kind of agree on the basing of how much time for this and how much time for that. They didn't object -- I shouldn't say they agree, but they didn't raise any objections about that. There was only the overlaying question of whether there should be any discovery at all.

THE COURT: All right. Can you give me a sense of what the scope of this is? I'm making this up, not trying to tie it to this. Is this discovery about a couple accounts,

discovery about all of the accounts that this acquisition had? Is it fifteen years of banking records? Is it, well, we want you to have access to X number of years of banking records, but we think they can be searched by -- you know, by using some sort of computer-based software to do this? Are you talking about documents that are all over the world? France? Canada? Lebanon? I have no idea. What is involved, from your perspective, in terms of this discovery?

MR. TOLCHIN: We have not yet had the benefit of initial disclosures -- the automatic disclosures, I'm afraid. With those, the defendants would tell us where their documents are and who has them and what there are. And I'd be more equipped to answer that question. Which is why I think we should -- you know, at least let's start with initial disclosures. The audits that we have sought will also, I think, be very informative as to specifics about the accounts. So I can't buy a pig in a poke. I don't know where their documents are. I don't know what they are. I do know that they acquired the bank. And it's not like they had accumulated documents over a century. Whatever documents Societe Generale got they got all in one fell swoop from when they acquired Lebanese Canadian Bank. So they know what they've got and they've got it all in one place.

THE COURT: All right. Is there anything in the case before Judge Merkl that relates in any way to this?

MR. TOLCHIN: I'm not sure what -- when you say "relates to this".

THE COURT: Well, meaning, you want to do discovery. Is there any discovery that's been produced in her case that would be helpfully produced in this case? Are you overlapping that?

MR. TOLCHIN: No.

THE COURT: No?

MR. TOLCHIN: I mean, I wish there would be. I wish there would be. But we've had no discovery related to Lebanese Canadian Bank or Societe Generale.

THE COURT: You mean you're saying in this case, you haven't had any?

MR. TOLCHIN: In any case.

THE COURT: Okay. Look, the fundamental point is -- you know, we'll hear the defendant's argument. One is, this case might go away if there's no jurisdiction. Two, this case might move if it should be somewhere else. Three, maybe we'll get some more clarity -- I don't know -- on the motion practice. And so we shouldn't go down the path of the discovery. But of course, an obvious is this is potentially -- I'm trying to get a handle on what it is -- a lot of discovery, a lot of work. Maybe you're doing translations, there are different computer systems, there is international discovery. There's quite a number of parties on the plaintiff side. So

maybe this should be just liability-focused and not -- and just absolutely put anything about damages on hold. There's a lot of different pieces, but I don't have a sense.

So if looking at my question, is there any information, to your knowledge, that was exchanged in the other case that has somewhat similar theories that would be relevant here? Because if that's already been produced, then maybe it's a more efficient approach to think about, well, what's produced over there in the other case? But I don't know, maybe they're totally unrelated in the sense of no overlapping discovery. So do you have any idea? This is Bartlett?

MR. TOLCHIN: Bartlett's not my case.

THE COURT: No, I know that, but I mean, do you know what's going on in it?

MR. TOLCHIN: As far as I know, Bartlett's in the same position as we are, but I don't know the Bartlett docket. I can't speak to it. I'm not part of it. If they've exchanged it -- if they've exchanged discovery, I don't get a copy.

THE COURT: Okay. I mean, they have a long record of discovery in that case, but. Okay.

MR. TOLCHIN: Well, but not to -- was it jurisdictional discovery?

THE COURT: You can read the docket.

Okay. All right. Let's hear from defendants. I would like a series of questions. If you want to say anything

else about why you think there shouldn't be discovery besides what you already have put in the record, you can add to that. And then if you have a sense of if there were going to be discovery, what might be a helpful way to have it in stages? And is there any relevance of what's going on, what has gone on in Bartlett that might help streamline what's going on here? Or any other reasonable approach to this situation, if there were going to be discovery, understanding you don't want there to be discovery.

MR. SULLIVAN: Thank you again, Your Honor. Again, Your Honor, this is Mike Sullivan that is speaking. Brian Leske is also on the call. He had a childcare matter. So right now he's with his four-year-old son, so I'll be taking the lead. Brian has been principal in the case and has dealt with Mr. Tolchin recently around the discovery issue. So he may weigh in, Your Honor, if it's okay, if I misstate something or if there's some additional details that he can provide that would be helpful to the Court.

Some of the points that Your --

THE COURT: That's fine.

MR. SULLIVAN: I'm sorry, Your Honor?

THE COURT: I said, that's fine.

MR. SULLIVAN: Okay. Thank you, Your Honor. Thank you. Your Honor, some of the points you made or pursued with Mr. Tolchin are very much relevant. The allegations go back

over sixteen years, I believe. Our client, SGBL, acquired the assets, I think, in 2009. And even though the case was filed in 2019, it was dismissed. No discovery was pursued when the case was first filed. And as Attorney Tolchin has indicated, it was first filed, I think -- I believe as Nichi (ph.), it evolved to Kaplan, and now we're at Lelchook. But it's effectively the same case, as I understand it.

No discovery was requested then. A motion to dismiss was filed and was granted based on lack of personal jurisdiction. But a long delay between 2019 and today, there's nothing to do with any delays by SGBL. The dismissal was allowed, the case went away, and then the Second Circuit, after a couple of times going up there, sought and got U.S. -- New York court input and then finally reinstated the case and remanded it. So for all practical reasons, it's a new case. It's really a 2025 case, even though originally filed in 2019.

There's an enormous amount of documents potentially that will be requested by the plaintiff. It's an enormous undertaking by SGBL. The documents are located in Lebanon. Some are electronic. A number of them have been in storage for well over sixteen years in hard copies that have to be searched through manually by bank personnel at a time when Lebanon continues to be in a financial crisis. I know our client, SGBL, has laid off a substantial number of employees, so it would be tremendously burdensome while a motion to dismiss

based on subject matter jurisdiction is going to be litigated.

Now, the Court granted a scheduling order on that and then a hearing, I believe, in April of 2026 for argument on the motions themselves. So you know, within the matter of several months, we'll know whether or not the case is going to be dismissed. And we can avoid a substantial amount of both time, money, and what would likely be some discovery litigation practice by just delaying the discovery for several more months.

I believe at least one of the requests being made by Mr. Tolchin today is this audit, which would be subject to, I believe, bank secrecy. I think the Court would probably request to see whether or not the government of Lebanon would allow for the production. The client itself would be prohibited, I believe, from producing anything that's subject to bank secrecy without the Lebanese government's approval or the approval of an individual client.

You asked about the Bartlett matter. And while the allegations in Bartlett are under JASTA as well, it's for a different time period. A different group of plaintiffs in the alleged harm was caused in a different location, as well as a different time period. In that particular case, Bartlett plaintiffs substantially limited, at least initially, the scope of discovery with particular client accounts or names of the clients or customers, and then bank secrecy was not allowed

by -- or to allow the production was not allowed by the government of Lebanon. But the plaintiffs in -- the defendants in that case have sought authorization from individual clients to see whether or not they would allow the production of documents.

That case is proceeding along. Discovery has moved along somewhat in the Bartlett matter, but it's still slow and it's still expensive. We're nowhere near there here in this particular case, in terms of naming any particular client. So you know, I think it's going to be an extraordinary cost to begin discovery here at a time when, within a matter of a few months, we'll know whether or not the case will be dismissed because of lack of subject matter jurisdiction or for other reasons, Your Honor.

The only issue that's been resolved by the Second Circuit and by the Court is the Court has determined that there is personal jurisdiction over SGBL as a successor acquiring the -- some of the assets and liabilities of LCB.

THE COURT: Okay. Can you explain a little more why some of the materials in Bartlett don't relate here? I mean, I can see different victims, yes, yes, but is the activities of the bank not similar? I mean, I don't -- I mean, I have looked at --

MR. SULLIVAN: Yes.

THE COURT: -- and I'm currently looking at the docket

in Bartlett, which seems like there was a fair amount of discovery, and it seemed like there would be overlapping areas of interest. Is that not right? Or you don't know yet?

MR. TOLCHIN: Your Honor --

MR. SULLIVAN: Well, I would say I don't know yet, Your Honor.

THE COURT: I'm asking defendants' counsel.

MR. SULLIVAN: Well, I would say I don't know yet whether or not it's the same accountholders that Mr. Tolchin would be requesting banking information from that have been requested in the Bartlett matter.

THE COURT: Okay.

All right. Plaintiffs' counsel, what did you want to say?

MR. TOLCHIN: I just wanted to point out that to listen to what counsel just said, yeah, there's an oral argument date set for April. And so he says, oh, it's just a few months until there will be a resolution of whether there's jurisdiction. But that's not really likely. That's just an oral argument date. It's unlikely to be decided. If they don't like the result, they'll certainly seek to appeal again. Meanwhile, he also says that anything that we're asking for he's going to say that it's covered by bank secrecy. He'll have to make motions about that. So you know, my path says, let's at least start and get closer to resolving some of those

issues rather -- in parallel, rather than putting them one after the other.

Counsel also said there's documents and warehouses in Lebanon. I certainly hope those warehouses still exist. I'd like to see initial disclosures where they say who has the documents, and who's the custodian of them, and where are they, and what are -- and what are they, so we can start talking in concrete terms instead of just vagueness.

One thing I didn't understand is Counsel said that the government of Lebanon is having financial difficulties. Well, you know, that may be true, but we're not suing the government of Lebanon. The government of Lebanon is not a party of this case. And I don't know how the government of Lebanon's financial difficulties caused Societe Generale to lay off people. Last I looked, Societe Generale was an extraordinarily large bank, one of the major players in the world. So I haven't heard that it is hurting because of whatever financial troubles the government of Lebanon may be having. I can't understand how that's connected.

But I'm trying to be practical here. Rather than layering delay after delay, one after another, let's at least start. Get me the two items that I asked for, let's exchange initial disclosures, and then let's come back. But at least we'll be closer to the mark. And exchanging initial disclosures certainly doesn't involve any multi-million-dollar

effort of discovery. But it does help us to identify who are the witnesses, where are the documents, and starting to put some flesh on the general bones of the case.

THE COURT: All right. Anything else from defendants' counsel?

MR. SULLIVAN: Your Honor, if I said the government of Lebanon, there's a financial crisis in Lebanon that affects the banking system as well, because of the financial crisis. There is a request with -- there is a pre-motion conference letter that was filed with the Court that said we would try to resolve the discovery issue on this call with Your Honor, and if we're unable to do so would file a motion to stay discovery.

And also, Your Honor, before any discovery is initiated -- besides the bank secrecy, which is outside of our control -- we did engage in discussions around a protective order in the Bartlett matter. We would certainly want to do the same here as well, to make sure there was a proper protective order in place before any discovery is issued.

THE COURT: All right. So a couple of things. I think you should start discovery because despite my multiple questions to both sides, I do not have a sense of how expansive or difficult or burdensome the discovery would be and how that could break out into different tranches of discovery. I think it makes sense to do initial disclosures on both sides. And I see there's not even seeming interest in having settlement

discussions based on the submission of the proposed schedule.

But I think, plaintiffs, you should have to start to put some numbers down with regard to damages, which then might give some sense of what this is about. Currently, there's no interest in doing that. And have some idea of the discovery. What the particular issues are with the two items or group of items that the plaintiff is describing and requested, it was a premature -- well, let me see. The request is not due, but you can have a conversation with each other as to what the issues are with producing what was requested. And if there ends up being some objection to those in particular or some particular difficulty, you can raise that. But let's start.

And then I want you to have a conversation about what was produced in the Bartlett case, and that the same material in part -- either in part of what you would be looking for or it's a subset of what you are looking for here, that could be efficiently produced instead of starting all over again. And maybe there's not, but it would just -- given the general allegations that are made, it seems like you have some aspects of the cases that overlap. So have a detailed conversation about that and see if that can be a fruitful area of producing discovery in a useful way.

A couple of points to be made. And I think you probably have addressed these in other cases. But if there are going to be arguments made about why you can't produce certain

documents, that will -- I mean, we can consider them. But nobody should be assured that that's going to mean the documents don't need to be produced. And if they're not produced here because of some other concern, and that production is not excused, there can be adverse inferences or some other adverse consequence for that.

I hear that those are the issues. It may be that everybody here has to go through hoops to try to exhaust the possibilities of discovery being produced. But if this case moves on to full-blown discovery, I don't know if that's going to answer the concerns that -- about whether discovery is made as completely as it needs to be. I'm not pre-judging it, I'm just saying I'm not accepting that that will immediately -- you know, that that's going to excuse a whole lot of discovery.

So taking into account the expense and potentially the difficulties given that some of the materials are in Lebanon, I want you to think about -- together -- you know, how one would roll this out if it were going to go ahead. And I think you need to do these first steps to have an idea of what's involved. And maybe doing a little bit will make clear that everything should be on hold until the other motion is decided. Or maybe it makes clear that some discovery can be done during the pendency of the motion. Or maybe none of this should be stayed. But do this in at least initial steps and involve those three things: initial disclosures, the responses to what

plaintiff has asked for, and conversations about the Bartlett materials and what should happen there.

And then on this point about confidentiality, you know, you're -- it's fine if you want to discuss a confidentiality agreement between yourselves. But I'm not a fan of overbroad confidentiality orders, and I don't agree that the general matter everything needs to be so ordered. It may be that there are some particular areas of production that require a court order, and if that's what you're talking about, then feel free to be asking for an order, but otherwise you should come to an agreement and start making the production. And if you can't come to an agreement, you can submit your competing versions of what it is that you would agree to, but you should not be holding off on discovery unless there is some other legal basis that requires you to get the Court's approval for a confidentiality order. We're not up to that yet. But I'm telling you, (audio interference) looking at it.

All right. So in terms of dates -- just looking at the docket again. Let's see where you are.

What's the oral argument date that you're mentioning?

MR. SULLIVAN: April --

MR. TOLCHIN: It's presently April 2nd, but I'll let the cat out of the bag and say that we're planning to ask that it be changed because it's on a religious holiday. But it would likely be someplace around there.

THE COURT: Okay. I mean, I think doing what I'm suggesting or telling you is what you need to do, which is initial disclosures, talking about addressing and starting to look into the material that the plaintiff has requested. And talking about Bartlett is something you should probably be able to do in, say, the next, like, ten weeks or so. So by the end of February.

So what I would like is for -- that's the course of action you should be taking. And then I think we can have an -- you can give me a status letter, say -- let me look -- like, February 26th about where you are. And then if it makes -- you could do two things. Tell me what you've done. Tell me about your disagreements so that you're not required to wait till then to tell me about your disagreements. If you want to raise it earlier in a joint letter, that's fine. And what you're proposing going forward. And if we should have a conference, we'll schedule a conference at that point. I think that's a reasonable amount of work and discussion for this limited period.

MR. TOLCHIN: Your Honor, is this your --

THE COURT: If you make any progress, you can let me know you're doing more.

Yes. Sorry. Who was that, the plaintiff?

MR. TOLCHIN: Yeah. Is it your intention, Your Honor, to enter an order today with -- embodying what you've just

said, or just the dates, or?

THE COURT: Yes, but -- no, yeah, we'll have a summary order from today, but I'm telling you what to do: initial disclosures, conversation about the two sets of materials that you said that you requested, and a detailed discussion about whether the Bartlett production could be helpful in moving discovery along here in an efficient way, right? These are materials that have been produced in the United States for discovery in a case that has at least some overlapping issues. So maybe that would be a good place to start, because that case, the discovery has been going on for quite a while.

Now, obviously I haven't seen the production. Maybe in the end of the day, the production is not that big, but at least -- well, anyway, that's as much as I'll say. And it may be that you say that there's issues that have been addressed in Bartlett that are hopefully instructive here, so. You don't even know what it's about yet really. In terms of discovery, I think you need to look at that. And if it turns out Bartlett is not helpful at all, then fine, but you know, put it aside. But I want you to start there because I think if it is useful material, it would be a way to catch up on the couple of years where discovery hasn't been going on here.

And the one other -- you know, I understand the subject matter jurisdiction. But if your point is also or instead forum non conveniens, then if -- the implication is

you're going to litigate this somewhere. So this would not be a waste to do this work now, so.

MR. SULLIVAN: Understood.

THE COURT: All right.

MR. TOLCHIN: Where are we going to litigate it? Lebanon?

THE COURT: I don't know. But that's one of their motions, right? So.

MR. TOLCHIN: Yep.

THE COURT: Anyway. You can duke that out in the motion practice.

All right. Anything else to talk about here?

MR. SULLIVAN: Nothing from SGBL, Your Honor. Thank you.

THE COURT: Plaintiffs?

MR. TOLCHIN: Nothing from plaintiffs, Your Honor.

THE COURT: All right. Thanks. Have a good new year. Take care.

MR. SULLIVAN: Thank you. You as well, Your Honor.

MR. TOLCHIN: Take care. Bye-bye.

(Proceedings concluded)

* * * * *

C E R T I F I C A T I O N

I, Melinda Friedland, court-approved transcriber, do hereby certify the foregoing is a true and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

January 13, 2026

______________________________ ______________________

Melinda Friedland, CDLT-268 DATE

eScribers, LLC
7227 North 16th Street
Phoenix, AZ 85020
www.escribers.net