UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LELCHOOK, et al.,

Plaintiffs,

-against-

SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL,

Defendant.

19-cv-00033-CBA-VMS

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) BY DEFENDANT SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL**

**ASHCROFT LAW FIRM, LLC**

Michael J. Sullivan
Brian J. Leske
15 Broad Street, Suite 500
Boston, MA 02109
T: 617-573-9400
F: 617-933-7607
msullivan@ashcroftlawfirm.com
bleske@ashcroftlawfirm.com

*Counsel for Société Générale de Banque au Liban S.A.L.*

Dated: May 26, 2026

## TABLE OF CONTENTS


*Introduction* ........ 1

STATEMENT OF THE CASE ........ 2

I. FACTS ........ 2

A. Plaintiffs ........ 2

B. Third Party LCB ........ 2

C. Defendant SGBL ........ 2

D. SGBL Becomes the High Bidder to Purchase Certain LCB Assets and Liabilities ........ 3

II. PROCEDURAL HISTORY ........ 3

A. The Instant Lawsuit Against SGBL (Only) ........ 3

B. Plaintiffs' Identical, Earlier-Filed Lawsuits against LCB (Only) ........ 4

C. SGBL's Motion to Dismiss for Lack of Subject-Matter Jurisdiction ........ 5

D. The Instant Motion to Dismiss for Failure to State a Claim ........ 6

ARGUMENT ........ 6

I. THIS COURT SHOULD DISMISS THIS CASE BECAUSE PLAINTIFFS FAIL TO ASSERT A VALID FEDERAL CAUSE OF ACTION ........ 6

A. A Successor Liability Count is Not an Independent Federal Cause of Action But Rather a Legal Theory That Raises a Question of State Law ........ 7

B. The ATA Does Not Supply the Necessary Federal Cause of Action ........ 10

II. IN THE EVENT THIS COURT DOES NOT DISMISS THIS CASE, IT SHOULD DISMISS PLAINTIFFS' SUCCESSOR LIABILITY COUNTS TO THE EXTENT THEY ARE PREMISED ON NOW-DISMISSED LIABILITY OF LCB, SGBL'S ALLEGED PREDECESSOR ........ 12

A. This Court Should Dismiss Count I Because LCB's Primary ATA Liability Is No Longer at Issue in Plaintiffs' Identical, Earlier-Filed Lawsuits ........ 12

B. This Court Should Dismiss Counts I and II to the Extent They Apply to Ester Lelchook's Individual Claims ........ 13

*Conclusion* ........ 13

## TABLE OF AUTHORITIES

**Cases**

*Bardy v. Bonnem,*
Sup. Ct., Westchester Co., Nov. 14, 2024,
Jamieson, J., decision and order, Index No. 55909/2023 .....7

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) ..... 10

*Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Allure Metal Works, Inc.*,
No. 16-CV-1303 (JFB) (GRB), 2017 U.S. Dist. LEXIS 11892
(E.D.N.Y. Jan. 25, 2017) .....8

*Boim v. Am. Muslims for Palestine*,
9 F.4th 545 (7th Cir. 2021) .....9

*Boim v. Am. Muslims for Palestine*,
2021 U.S. App. LEXIS 27619 (7th Cir. Ill., Sept. 14, 2021) .....9

*Cargo Partner AG v. Albatrans, Inc.*,
352 F.3d 41 (2d Cir. 2003) .....3

*City of Syracuse v. Loomis Armored US, LLC*,
900 F. Supp. 2d 274 (N.D.N.Y. 2012) .....1

*E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*,
3 F.4th 954 (7th Cir. 2021) .....8

*Epperson v. Entm't Express, Inc.*,
242 F.3d 100 (2d Cir. 2001) .....8

*In re Fairchild Aircraft Corp.*,
184 B.R. 910 (Bankr. W.D. Tex. 1995) .....7

*In re Motors Liquidation Co.*,
590 B.R. 39 (S.D.N.Y. 2018) .....7, 12

*Jesner v. Arab Bank, PLC*,
584 U.S. 241 (2018) ..... 11

*Kaplan v. Lebanese Can. Bank, SAL*,
405 F.Supp.3d 525 (S.D.N.Y. 2019) .................................................................... 12

*Kaplan v. Lebanese Can. Bank, SAL*,
999 F.3d 842 (2d Cir. 2021) ..................................................................................*passim*

*Lelchook v. Lebanese Can. Bank, SAL*,
No. 1:18-cv-12401, (GBD) (KHP) (S.D.N.Y.) ....................................................*passim*

*Lelchook v. SGBL*,
67 F.4th 69 (2d Cir. 2023) ................................................................................ 5, 8, 9

*Lelchook v. SGBL*,
147 F.4th 226 (2d Cir. 2025) ............................................................................. 3, 4, 8

*LiButti v. U.S.*,
178 F.3d 114 (1999) ............................................................................................. 1, 8

*Licci v. American Express Bank Ltd.*,
Case 1:08-cv-07253-GBD (S.D.N.Y.) .........................................................................4

*Morrison v. Nat'l Austl. Bank Ltd.*,
561 U.S. 247 (2010) .................................................................................................. 10

*Peacock v. Thomas*,
516 U.S. 349 (1996) ....................................................................................................8

*RJR Nabisco, Inc. v. European Community*,
579 U.S. 325 (2016) .................................................................................................. 10

*Rothstein v. UBS AG*,
708 F.3d 82 (2d Cir. 2013) ........................................................................................ 10

*Tindall v. H & S Homes, LLC*,
No. 5:10-CV-044, 2012 U.S. Dist. LEXIS 13587, 2012 WL 369286
(M.D. Ga. Feb. 3, 2012)..............................................................................................7

*United States v. Texas*,
507 U.S. 529 (1993) .................................................................................................. 11

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ........................................................................ *passim*

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 1, 5, 6

**Statutes**

18 U.S.C. § 2333(a) ........................................................................................................ 2, 10, 13

28 U.S.C. § 1331 ............................................................................................................... 1, 5, 8

28 U.S.C. § 1332(a) ........................................................................................................... 6

**Other Authorities**

Jo Becker, *Beirut Bank Seen as a Hub of Hezbollah's Financing*
N.Y. Times (Dec. 13, 2011) ........................................................................................ 3

***Introduction***

This Court should dismiss this case under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs' amended complaint (Dkt. 73 ("Am. Compl."))—which asserts counts only against Defendant Société Générale de Banque au Liban S.A.L. ("SGBL") and is based solely on a successor liability theory—fails to state a valid claim for relief.[1] It is well settled that a successor liability count is not an independent cause of action but rather a state common law doctrine used to transfer liability from a "predecessor" to a "successor." *See City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 290 (N.D.N.Y. 2012) ("'successor liability' is not a separate cause of action but merely a theory for imposing liability") (collecting cases); *see also LiButti v. U.S.*, 178 F.3d 114, 124 (1999) ("Successor liability is a question of State law."). This leaves Plaintiffs without an independent federal claim upon which relief may be granted, requiring dismissal.

In the event this Court finds Plaintiffs may assert stand-alone successor liability counts against SGBL, it should dismiss them in two respects. *First*, it is axiomatic that a successor—here, SGBL—is only liable to the same extent its alleged predecessor—here, the Lebanese Canadian Bank ("LCB"). This Court should dismiss Count I—which is premised on LCB's alleged primary liability under the Anti-Terrorism Act ("ATA")—because (1) the district court dismissed that claim in one of Plaintiffs' identical, earlier-filed lawsuits against LCB and (2) it is not at issue in the other. *See Kaplan v. Lebanese Can. Bank, SAL*, 999 F.3d 842, 853 (2d Cir. 2021) ("*Kaplan*") (affirming dismissal of primary liability claim); *Lelchook v. Lebanese Can. Bank, SAL*, No. 1:18-cv-12401, Dkt. 66 (Am. Compl.) at ¶¶ 121-31 (GBD) (KHP) (S.D.N.Y.) ("*Lelchook v. LCB*")

[1] SGBL recognizes that a merits question sometimes may merge with a jurisdictional question—or at least the distinction between the two may be blurred—where, as here, Plaintiffs' argument appears to be that the applicable federal statute creates the cause of action necessary to supply federal question jurisdiction under 28 U.S.C. § 1331. SGBL accordingly re-asserts and incorporates the facts and all the arguments in its pending motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) in support of its instant motion under Federal Rule 12(b)(6). *See* Statement of the Case, II.C., *infra*.

(asserting only a secondary liability claim against LCB). *Second*, this Court should dismiss Counts I and II to the extent they apply to Plaintiff Ester Lelchook's claims made in a personal capacity (rather than a representative capacity) because (1) she is not a "national of the United States," 18 U.S.C. § 2333(a), and (2) those individual claims also already have been dismissed. *Lelchook v. LCB*, Dkt. 152 (Mem. Decision and Order) at 17-19.

## STATEMENT OF THE CASE

### I. FACTS

#### A. Plaintiffs

Plaintiffs are U.S. nationals or their representatives who allege they were injured by rocket attacks carried out by Hezbollah between July 12, 2006, and August 14, 2006. Am. Compl. ¶ 59. Four of the Plaintiffs (the "Lelchooks," *see* Am. Compl. ¶ 8, n.1), are the estate and family members of David Martin Lelchook who was killed in the rocket attacks. Am. Compl. ¶¶ 2, 61-66. The remaining Plaintiffs allege they suffered physical and/or emotional injuries because of the attacks or their proximity to the attacks. Am. Compl. ¶¶ 67-80. Plaintiffs seek $1.5 billion in damages. Am. Compl. at 41 (Prayer for Relief).

#### B. Third Party LCB

LCB is a corporation organized under the laws of Lebanon and headquartered in Beirut, Lebanon. Am. Compl. ¶ 3. In 2011, the U.S. Department of the Treasury designated LCB as "a financial institution of primary money laundering concern." *Id*. ¶117.

#### C. Defendant SGBL

SGBL is a Lebanese joint stock company incorporated in 1953 and headquartered in Lebanon. Am. Compl. ¶¶ 10, 11. It offers banking, insurance, and financial services to individuals and corporations in Lebanon and the region. Plaintiffs do not allege that SGBL had anything to do

with LCB's decisions or conduct, including its provision of banking services to any customer at any time. LCB and SGBL have no corporate relationship—past, present, or future.

**D. SGBL Becomes the High Bidder to Purchase Certain LCB Assets and Liabilities**

After LCB's designation, the Central Bank of Lebanon proceeded with a competitive sale of LCB's assets and liabilities pursuant to Lebanese law.[2] SGBL submitted the highest bid and agreed to purchase certain LCB's assets and liabilities for $580 million cash subject to the final valuation adjustments, review and approval of the Central Bank. Am. Compl. ¶ 121.[3] The U.S. Government supported the asset-and-liability purchase and considered SGBL a "responsible owner" based on its due diligence and commitment to combat money laundering and the financing of terrorist organizations.[4]

## II. PROCEDURAL HISTORY

**A. The Instant Lawsuit Against SGBL (Only)**

This case is before this Court on remand following the Second Circuit's ruling that SGBL may be subjected to personal jurisdiction in New York. *Lelchook v. SGBL*,147 F.4th 226 (2d Cir. 2025) ("*Lelchook IV*"). Plaintiffs' amended complaint seeks to hold SGBL responsible for LCB's alleged (and yet-to-be-determined) ATA liability arising from the 2006 rocket attacks. Plaintiffs do not allege SGBL played any role in the tortious conduct alleged in the amended complaint—specifically, LCB's provision of banking services to customers allegedly linked to Hezbollah—or

[2] Asset sales differ in nature from mergers and stock acquisitions. An asset sale is neither the acquisition of a business entity, nor a merger of the seller and buyer. Instead, it is a transfer of property, tangible or intangible. That is, "the nature of an asset sale is that the seller's ownership interest in the entity is given up in exchange for consideration." *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 47 (2d Cir. 2003). SGBL's no-stock, all-cash transaction therefore was not a corporate reorganization, continuation of a business, or a merger (statutory or otherwise).

[3] Because the transaction between SGBL and LCB was not a merger or stock swap and LCB instead received over one half-billion dollars cash from SGBL, Plaintiffs' characterization that SGBL "stripped [LCB] of its assets" and "but for SGBL's purchase of LCB's assets and assumption of its liabilities, LCB would easily have been able to satisfy a judgment against it in favor of the plaintiffs," is not supported by their own allegations. Am. Compl. ¶¶ 128, 130.

[4] *See* Jo Becker, *Beirut Bank Seen as a Hub of Hezbollah's Financing* (*The New York Times*, Dec. 13, 2011) available at https://www.nytimes.com/2011/12/14/world/middleeast/beirut-bank-seen-as-a-hub-of-hezbollahs-financing.html.

had anything to do with the 2006 rocket attacks that caused Plaintiffs' injuries. Instead, Plaintiffs' theory of liability is that SGBL allegedly contractually acquired all of LCB's assets and liabilities under a Lebanese sales and purchase agreement (the "SPA") in 2011.[5] Count I asserts SGBL has successor liability for LCB's alleged primary ATA liability. Am. Compl. ¶¶ 131-143. Count II asserts SGBL has successor liability for LCB's alleged secondary liability. *Id*. ¶¶ 144-54.

**B. Plaintiffs' Identical, Earlier-Filed Lawsuits against LCB (Only)**

Plaintiffs chose not to assert ATA claims against LCB in this case. Instead, Plaintiffs made the strategic decision to litigate their claims under the ATA against LCB in identical, earlier-filed cases in another federal district without naming SGBL as a defendant. Plaintiffs' counsel first filed against LCB under the ATA for injuries sustained from 2006 Hezbollah rocket attacks based upon LCB's provision of banking services to five alleged Hezbollah-related customers in 2008. *Licci v. American Express Bank Ltd.*, Case 1:08-cv-07253-GBD (S.D.N.Y.) (formerly "*Licci*" but now known as "*Kaplan"*). In 2019, Plaintiffs' counsel filed another lawsuit against LCB, which is identical to the 2008 case, except the complaint adds new plaintiffs and several LCB officers as defendants and does not assert a primary liability claim against LCB. *Lelchook v. LCB*, Dkt. 66 at ¶¶ 1-4 (adding Lelchooks), 11 (adding corporate defendant), 121-31 (asserting only a secondary claim against LCB); *see also id*. Dkt. 11 (Related Case Statement) (explaining *Kaplan* and *Lelchook v LCB* are the same).

A comparison of each of the operative complaints shows that all 18 of the plaintiffs in *Kaplan*/*Lelchook v. LCB* are plaintiffs in this case, with the only difference being that this case

[5] SGBL continues to deny it acquired all of LCB's assets and liabilities but recognizes the Second Circuit was required to take that allegation as true for purposes of its analysis. *Lelchook IV*, 147 F.4th at 233 n.1 (explicitly "accept[ing] as true all of [the complaint's] factual allegations"). Contrary to Plaintiffs' suggestion, the Second Circuit did *not* interpret the Lebanese SPA or any of its provisions in any respect. *See id*. SGBL reserves all its rights and, if it becomes necessary, SGBL will submit the entirety of the SPA and show that SGBL did not assume the ATA liability at issue in this case and the SPA provides a complete defense to the successor liability counts asserted by Plaintiffs.

includes the Lelchooks (two of which are suing in multiple capacities) and three U.S. nationals who resided in Israel at the time of 2006 rocket attacks. The underlying alleged ATA liability in all three cases is the same.

In 2021, the Second Circuit affirmed the dismissal of the primary liability claims against LCB in the 2008 case but found the aiding-and-abetting claims against LCB stated a claim under Federal Rule 12(b)(6). *Kaplan*, 999 F.3d at 853, 867. *Kaplan* and *Lelchook v. LCB* have been consolidated and Plaintiffs and LCB are actively litigating LCB's alleged secondary liability under the ATA.

**C. SGBL's Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

Following remand of this case to this Court, SGBL moved to dismiss for lack of subject-matter jurisdiction under Federal Rule 12(b)(1). *See* Dkt. 107-1 (SGBL's Mem. of Law in Support of its Mtn. to Dismiss under Federal Rule 12(b)(1) ("SGBL Mtn. to Dismiss"); Dkt. 108 (SGBL's Reply in Support of Mtn. to Dismiss under Federal Rule 12(b)(1) ("SGBL's Reply")).[6] SGBL's argument is that a successor liability count does not create federal question jurisdiction under section 1331 even it implicates an alleged violation of a federal statute like the ATA. 28 U.S.C. § 1331; SGBL Mtn. to Dismiss at 11-19; SGBL Reply at 1-8. SGBL also explained that Plaintiffs have not asserted that SGBL—an undisputedly legally-distinct entity from LCB—itself violated the ATA to present a federal question. SGBL Reply at 4-6; *see Lelchook v. SGBL*, 67 F.4th 69, 80 (2d Cir. 2023) ("*Lelchook II*") (holding SGBL and LCB are not *alter egos* nor did SGBL merely continue as LCB).

[6] Given the district court's threshold dispositive determination that personal jurisdiction was lacking, it did not consider SGBL's alternative arguments that the case should be dismissed for failure to state claim under Federal Rule 12(b)(6) on the grounds the ATA did not create an independent federal cause of action for successor liability (and, *a fortiori*, that the district court lacked federal question jurisdiction).

SGBL additionally showed that diversity jurisdiction under section 1332(a) does not apply because a successor liability count is *not* an independent federal cause of action (but rather a state common law doctrine or theory to transfer liability) and, in the absence of a valid cause of action, there is no qualifying "civil action" to which diversity-of-citizenship and amount-in-controversy jurisdictional pre-requisites could apply to confer original federal court jurisdiction. 28 U.S.C. § 1332(a); SGBL Reply at 8-9. SGBL finally argued that even if the diversity statute applies, the case should be dismissed on prudential ripeness grounds. *Id*.

This Court heard oral argument on the motion on April 28, 2026, and reserved decision.

### D. The Instant Motion to Dismiss for Failure to State a Claim

Following oral argument, this Court ordered the instant briefing on SGBL's motion to dismiss for failure to state a claim. This Court should now find the ATA does not create an independent federal cause of action for successor liability—a question of law Plaintiffs argued must be raised in a Federal Rule 12(b)(6) motion rather than a Federal Rule 12(b)(1) motion, *see* n.1, *supra*—and dismiss this case.

## ARGUMENT

### I. THIS COURT SHOULD DISMISS THIS CASE BECAUSE PLAINTIFFS FAIL TO ASSERT A VALID FEDERAL CAUSE OF ACTION

This Court should dismiss for failure to state a claim because Plaintiffs' successor liability counts are not independent federal causes of action. Instead, successor liability is simply a state doctrine that seeks to transfer liability from a predecessor to a successor. Nor does the ATA—which makes no mention of successor liability—supply a federal cause of action. In the absence of a valid federal claim upon which relief may be granted, this Court should dismiss the case in its entirety, leaving the issue of SGBL's successor liability for a later time, for a different court, in the event Plaintiffs are successful in obtaining a judgment against LCB.

### A. A Successor Liability Count is Not an Independent Federal Cause of Action But Rather a Legal Theory That Raises a Question of State Law

Plaintiffs' two self-styled successor liability "claims for relief" against SGBL—which are "stand-alone" in the sense they are unaccompanied by any claim against LCB under the ATA—suffer from two fundamental flaws.

*First*, a "'successor liability' is not a separate cause of action but merely a theory for imposing liability on a defendant based on the predecessor's conduct." *City of Syracuse*, 900 F. Supp. 2d at 290 (collecting cases); *see In re Motors Liquidation Co.*, 590 B.R. 39, 59 (S.D.N.Y. 2018) (same). In other words, the doctrine "does not create a new cause of action against the successor so much as it transfers the liability of the predecessor to the successor." *City of Syracuse*, 900 F. Supp. 2d at 290; *see Tindall v. H & S Homes, LLC*, No. 5:10-CV-044, 2012 U.S. Dist. LEXIS 13587, 2012 WL 369286, *2 (M.D. Ga. Feb. 3, 2012) ("Successor liability is not a tort. It is an equitable tool used to transfer liability from a predecessor to a successor."); *In re Fairchild Aircraft Corp.*, 184 B.R. 910, 920 (Bankr. W.D. Tex. 1995) ("successor liability does not create a new cause of action against the purchaser so much as it transfers the liability of the predecessor to the purchaser"), *vacated on other grounds*, 220 B.R. 909 (Bankr. W.D. Tex. 1998). As such, a successor liability count is dependent upon an underlying and separate cause of action.[7]

---

[7] A New York Supreme Court judge recently surveyed New York law and reached the same conclusion:

> Although there is not a lot of caselaw in this area, research has revealed that claims of de facto merger, mere continuation and successor liability are not independent causes of action. *See*, *e.g.*, *Marcum LLP v. Fazio, Mannuzza, Roche, Tankel, Lapilusa, LLC*, 65 Misc. 3d 1235(A), 119 N.Y.S.3d 831 (Suff. Co. 2019) ("successor liability is not a separate cause of action, but merely a theory for imposing liability on a defendant based on a predecessor's conduct."); *Alesco Preferred Funding VIII, Ltd. v. ACP RE, Ltd.*, 74 Misc. 3d 1230(A), 164 N.Y.S.3d 808 (NY Co. 2022), *corrected*, (NY Co. 2022), and *aff'd as modified*, 209 A.D.3d 558, 176 N.Y.S.3d 252 (1st Dept. 2022) ("The alter-ego and successor liability claims . . . may not be maintained as separate and distinct causes cause of action in New York"); *Morris v. New York State Dep't of Tax'n & Fin.*, 82 N.Y.2d 135, 141 (1993).

*Bardy v. Bonnem,* Sup. Ct., Westchester Co., Nov. 14, 2024, Jamieson, J., decision and order, at 3-4, Index No. 55909/2023.

*Second*, it also is well settled in this Circuit that Plaintiffs' theory does not implicate federal law. To the contrary, "'[s]uccessor liability is a question of State law.'" *Lelchook II*, 67 F.4th at 84 (quoting *LiButti v. United States*, 178 F.3d 114, 124 (2d Cir. 1999)). The Second Circuit confirmed this understanding in this case when it found personal jurisdiction could be exercised over SGBL only because it "could be liable under *New York* law." *Lelchook IV*, 147 F.4th at 240 (emphasis added). The fact that the underlying liabilities in *Lelchook* and *Libutti* were federal—specifically, under the ATA and the Internal Revenue Code, respectively—simply did not change the state-based nature of the successor liability count itself.

The conclusion that Plaintiffs have no federal claim for relief in this case is neither novel nor surprising. Federal courts have uniformly held in a myriad of contexts that a successor liability count seeking to shift liability to a non-culpable third-party presents no federal question even where the underlying liability is federal in nature. *See*, *e.g.*, *Peacock v. Thomas*, 516 U.S. 349, 352 (1996) (rejecting ERISA "as the source of federal jurisdiction for this suit" under section 1331 even though ERISA formed the basis for the third-party's underlying liability); *E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 956 (7th Cir. 2021) (rejecting argument that successor liability claim involving a federal statute "was enough to show their claim arises under federal law and therefore raises a federal question properly in federal court"); *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001) (recognizing need for independent jurisdictional hook where a claim "raise[s] an independent controversy with a new party in an effort to shift liability"); *accord Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Allure Metal Works, Inc.*, No. 16-CV-1303 (JFB) (GRB), 2017 U.S. Dist. LEXIS 11892, at *10 (E.D.N.Y. Jan. 25, 2017) (rejecting "argument that *Peacock* does not apply because [plaintiff] is not seeking to enforce an extant judgment against a third party").

Notably, the Seventh Circuit specifically applied this principle to the ATA and only found a federal cause of action had been asserted because, unlike here, the successor and the predecessor were the same (albeit using different names). *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 555-56 (7th Cir. 2021), *rehearing denied*, 2021 U.S. App. LEXIS 27619 (7th Cir. Ill., Sept. 14, 2021). This makes sense because where the successor is the same entity as the predecessor—such as an *alter ego*, a surviving merger partner, or an entity that is a mere continuation of the predecessor—the claim in reality is that the successor directly violated the federal statute at issue, thereby creating federal court jurisdiction.[8] As SGBL has explained, this reasoning does not apply here because it is undisputed (and law of the case) that LCB and SGBL are separate Lebanese banks that reached their agreement at arm's length after a competitive bidding process with no continuing corporate relationship or ownership interest by LCB in SGBL. *See* SGBL Reply at 4-6 (explaining any argument that SGBL and LCB are the same entity "is precluded by the law-of-the-case doctrine, contradicted and conceded by [Plaintiffs'] own pleadings, and otherwise foreclosed by Circuit precedent"); *see also Lelchook II*, 67 F.4th at 78 (holding "Plaintiffs do not allege that SGBL and LCB are 'one and the same'").[9]

[8] This was SGBL's point when it stated—albeit unartfully—in its earlier motion papers that the ATA "includes" successor liability in certain circumstances. For example, in the important instance where, unlike here, a successor-defendant is the wrongdoer using a different name or corporate form (*i.e.*, a corporate reorganization with continuity of ownership), a plaintiff will have both a federal cause of action—*i.e.*, a direct claim under the ATA—and a federal forum—*i.e.*, federal district court—in which to pursue relief against that entity. *See* SGBL Mtn. to Dismiss at 15 (explaining "Plaintiffs may seek and recovery damages under a successor liability theory against any entity that is connected to the commission of a terrorist act or its causal chain" because "those successor entities would be directly liable under the ATA"). That simply is not the case for an asset-and-liability purchaser that has no connection to the seller or its tortious conduct, as the Second Circuit itself found with respect to SGBL. *Lelchook II*, 67 F.4th at 75 n.5, 78 n.11, 85 n.23 (finding LCB and SGBL are not the same).

[9] Plaintiffs additionally are judicially estopped from arguing SGBL and LCB are the same entity (either *de facto* or *de jure*) on the grounds the Second Circuit treated them as the same for purposes of its jurisdictional analysis. Plaintiffs took a contrary position in opposition to SGBL's petition for a writ of certiorari (which the U.S. Supreme Court denied), arguing instead that "the court below analyzed [SGBL's] *own* minimum contacts" with New York to find personal jurisdiction. Brief of Respondents in Opposition at 14, *Soc. Générale De Banque Au Liban, S.A.L. v. Lelchook*, No. 25-983 (U.S. March 23, 2026) (emphasis in original).

**B. The ATA Does Not Supply the Necessary Federal Cause of Action**

Plaintiffs attempt to bridge this gap by arguing that the ATA supplies their federal cause of action. This argument lacks merit for five reasons.

*First*, as a threshold matter, nowhere in Plaintiffs' amended complaint do they assert that the ATA has anything to do with SGBL's successor liability. Plaintiffs' contention is that SGBL is liable because it assumed LCB's liability *in the Lebanese SPA*, not by operation of the ATA. Am. Compl. ¶ 4 (SGBL "purchased all of LCB's assets, and contractually assumed all of LCB's liabilities, thereby assuming successor liability for LCB's liability").

*Second*, even so, the ATA does not mention successor liability, let alone explicitly create a successor liability cause of action. 18 U.S.C. § 2333(a). By its own terms, the ATA carefully extends its extra-territorial liability provisions only to terrorist-related acts committed abroad over those who commit them (primary liability) or help commit them (secondary liability). *Id.*; *see Rothstein v. UBS AG*, 708 F.3d 82, 98 (2d Cir. 2013) (declining to impliedly expand the ATA's scope beyond what was plain in the text); *Barnhart v. Sigmon Coal Co*., 534 U.S. 438, 452 (2002) ("[w]here Congress want[s] to provide for successor liability … it [does] so explicitly"). Nothing in the ATA states that it provides an independent federal cause of action to adjudicate foreign contractual successor liability questions in federal court.

*Third*, nor should this Court imply a right of action under the ATA because the presumption against extra-territoriality applies to preclude it. *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 339 (2016) ("[w]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms") (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 265 (2010)). This is particularly so given the ATA "is part of a comprehensive statutory and regulatory regime," which "reflect[s] the careful

deliberation of the political branches on when, and how, banks should be held liable." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 268 (2018) (plurality opinion).

*Fourth*, the fact that Congress knowingly passed the ATA against the backdrop of existing tort law shows no federal claim under the ATA exists. Congress knew a wide body of state successor liability doctrines exist and, to displace common law in favor of a federal rule, Congress must do so explicitly—which it unquestionably has not done. *See United States v. Texas*, 507 U.S. 529, 534 (1993) (reaffirming that "[i]n order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law"). That rule applies with even more force in matters as fundamental as the liability implications of corporate ownership and transactions, particularly foreign ones.

*Fifth*, as discussed above, the presence of an alleged underlying federal violation does *not* mean *the successor count itself* is a federal law claim. *See supra* at 8-9. Those cases uniformly hold that the allegation that a third party (like LCB) violated a federal statute (like the ATA) is not enough to make a successor liability count against a non-culpable, arms-length asset purchaser (like SGBL) a federal cause of action.

* * *

In the absence of an independent, cognizable cause of action for successor liability, Plaintiffs fail to state a claim upon which relief can be granted. And, as SGBL previously explained in its pending motions to dismiss under Federal Rule 12(b)(1), Plaintiffs also have otherwise failed to carry their burden of showing this Court has the authority to entertain this case.

## II. IN THE EVENT THIS COURT DOES NOT DISMISS THIS CASE, IT SHOULD DISMISS PLAINTIFFS' SUCCESSOR LIABILITY COUNTS TO THE EXTENT THEY ARE PREMISED ON NOW-DISMISSED LIABILITY OF LCB, SGBL'S ALLEGED PREDECESSOR

In the event this Court finds Plaintiffs can maintain their stand-alone successor liability counts here, it should dismiss them in two respects. "By definition, successor liability claims derive from the liability of the predecessor entity" and "[i]t follows that if claims cannot be brought against a predecessor entity, they cannot be brought against the successor." *In re Motors Liquidation Co.*, 590 B.R. at 63. Here, even assuming the amended complaint allegations are true, Plaintiffs cannot show SGBL has any successor liability for alleged liabilities that have been dismissed against its alleged predecessor, LCB.

### A. This Court Should Dismiss Count I Because LCB's Primary ATA Liability Is No Longer at Issue in Plaintiffs' Identical, Earlier-Filed Lawsuits

Plaintiffs' first count for successor liability is based on LCB's alleged primary ATA liability. Am. Compl. ¶¶ 131-43. It should be dismissed because, in Plaintiffs' 2008 identical parallel lawsuit against LCB, the district court correctly found Plaintiffs have "fail[ed] to sufficiently allege that Defendant [LCB] committed any act of 'international terrorism' or that their injuries were proximately caused by Defendant's actions," and the Second Circuit affirmed that ruling. *Kaplan v. Lebanese Can. Bank, SAL*, 405 F.Supp.3d 525, 531 (S.D.N.Y. 2019), *aff'd Kaplan,* 999 F.3d at 853 (holding Plaintiffs abandoned any appeal of that ruling, resulting in affirmance). Nor is LCB's primary liability at issue in Plaintiffs' other identical parallel lawsuit, having not been asserted. *Lelchook v. LCB*, Dkt. No. 65 at ¶¶ 121-31 (asserting only secondary ATA liability against LCB).

### B. This Court Should Dismiss Counts I and II to the Extent They Apply to Ester Lelchook's Individual Claims

Plaintiff Ester Lelchook—who Plaintiffs concede is not a "national of the United States," 18 U.S.C. § 2333(a)—asserts successor liability claims in both her representative capacity and individually. Am. Compl. ¶ 6; *see id.* ¶ 15 n.2. ("Ester Lelchook is non-diverse to SGBL because both are aliens"). This Court should dismiss any individual claim because the district court in Plaintiffs' 2019 identical parallel lawsuit against LCB agreed that "because Ester Lelchook is not an American citizen, she may only sue in a representative capacity and is thus precluded from bringing her own personal claims." *Lelchook v. LCB*, Dkt. 152 at 17 (dismissing claims); *see also Kaplan,* 999 F.3d at 847 ("[T]he ATA grants a private right of action *only* to 'national[s] of the United States'.") (citation omitted) (emphasis added). Once again, because those claims already have been dismissed against SGBL's predecessor, Plaintiffs cannot assert them against SGBL under a successor liability theory.

### *Conclusion*

This Court should dismiss this case, leaving adjudication of SGBL's alleged successor liability under the Lebanese SPA for another time and place in the event Plaintiffs are successful in obtaining a judgment against LCB.

Dated: May 26, 2026

Respectfully submitted,

ASHCROFT LAW FIRM, LLC

*/s/ Michael J. Sullivan*

Michael J. Sullivan
Brian J. Leske
15 Broad Street, Suite 500
Boston, MA 02109
T: 617-573-9400

F: 617-933-7607
msullivan@ashcroftlawfirm.com
bleske@ashcroftlawfirm.com

*Counsel for Société Générale de Banque au Liban S.A.L.*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation of Local Rule 7.1(c) because it contains 4,497 words, excluding the parts of the brief exempted by the aforementioned Local Rule.

*/s/ Michael J. Sullivan*
Michael J. Sullivan