UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LELCHOOK, et al.,<br><br>Plaintiffs,<br><br>-against-<br><br>SOCIETE GENERALE DE BANQUE AU LIBAN SAL,<br><br>Defendant. | 19-cv-00033-CBA-VMS |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) BY DEFENDANT SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL**

**ASHCROFT LAW FIRM, LLC**

Michael J. Sullivan
Brian J. Leske
15 Broad Street, Suite 500
Boston, MA 02109
T: 617-573-9400
F: 617-933-7607
msullivan@ashcroftlawfirm.com
bleske@ashcroftlawfirm.com

*Counsel for Société Générale de Banque au Liban S.A.L.*

Dated: August 6, 2026

# TABLE OF CONTENTS

*Preliminary Statement* ..... 1

ARGUMENT ..... 2

I. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM BECAUSE SUCCESSOR LIABILITY IS A COMMON LAW THEORY ARISING UNDER STATE LAW, NOT FEDERAL LAW ..... 2

II. PLAINTIFFS' PROCEDURAL ARGUMENTS AND DISCOVERY CONTENTIONS ARE MISPLACED AND IRRELEVANT ..... 5

A. SGBL's Instant Motion to Dismiss Under Federal Rule 12(b)(6) Is Proper ..... 5

B. Plaintiffs' Conclusory Discovery Allegations Are Misleading and Irrelevant ..... 6

III. ALTERNATIVELY, THIS COURT SHOULD DISMISS PLAINTIFFS' SUCCESSOR LIABILITY CLAIMS PREMISED ON CERTAIN ALLEGED ATA LIABILITY THAT IS UNAVAILABLE ..... 7

A. Plaintiffs Cannot Assert a Successor Liability Claim Against SGBL Premised on LCB's Alleged Primary ATA ..... 8

B. Ester Lelchook's Successor Liability Claim Premised Upon LCB's Alleged Liability to Her Personally (Rather Than in a Representative Capacity) Fails Because She is Not a U.S. National ..... 9

*Conclusion* ..... 11

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sandoval*,
532 U. S. 275 (2001) ... 3

*Alpert's Newspaper Delivery Inc. v. New York Times Co.*,
876 F.2d 266 (2d Cir. 1989) ... 9

*Bardy v. Bonnem*,
Sup. Ct., Westchester Co., Nov. 14, 2024,
Jamieson, J., unpublished decision and order, at 3-4, Index No. 55909/2023 ... 2

*Bartlett v. Société Générale de Banque au Liban S.A.L.*,
19 Civ. 007 (E.D.N.Y.) ... *passim*

*Central Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A.*,
511 U. S. 164 (1994) ... 3

*City of Syracuse v. Loomis Armored US, LLC*,
900 F. Supp. 2d 274 (N.D.N.Y. 2012) ... 2

*Erie R. Co. v. Tompkins*,
304 U. S. 64 (1938) ... 4

*FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*,
No. 24-345, 2026 U.S. LEXIS 2466 (June 11, 2026) ... 3

*In re Motors Liquidation Co.*,
590 B.R. 39 (S.D.N.Y. 2018) ... 10

*Jesner v. Arab Bank, PLC*,
584 U.S. 241 (2018) ... 4

*Kaplan v. Lebanese Can. Bank, SAL*,
405 F.Supp.3d 525 (S.D.N.Y. 2019) ... 8, 9, 10

*Kaplan v. Lebanese Can. Bank, SAL*
999 F.3d 842 (2d Cir. 2021) ... 8, 9, 10

*Lelchook v. Lebanese Can. Bank, SAL*,
No. 1:18-cv-12401 (S.D.N.Y.) ........................................................................*passim*

*Lelchook v. SGBL*,
67 F.4th 69 (2d Cir. 2023) ........................................................................2

*Lelchook v. SGBL*,
147 F.4th 226 (2d Cir. 2025) ........................................................................4, 5, 6

*LiButti v. United States*,
178 F.3d 114 (2d Cir. 1999) ........................................................................2

*Monahan v. N.Y.C. Dep't of Corr.*,
214 F.3d 275 (2d Cir. 2000) ........................................................................9

*Montana v. United States*,
440 U.S. 147 (1979) ........................................................................8

*Rodriguez v. Federal Deposit Ins. Corp.*,
589 U.S. 132 (2020) ........................................................................4

*Ruiz v. Commissioner of Dept. of Transportation of the City of New York*,
858 F.2d 898 (2d Cir. 1988) ........................................................................9

*Senatore v. Ocwen Loan Servicing, LLC.*,
2017 WL 3836056 (S.D.N.Y Aug. 31, 2017) ........................................................................9

*Sosa v. Alvarez-Machain*,
542 U. S. 692 (2004) ........................................................................4

*WC Capital Mgmt., Ltd. Liab. Co. v. UBS Sec., Ltd. Liab. Co.*,
711 F.3d 322 (2d Cir. 2013) ........................................................................10

**Rules**

Federal Rule of Civil Procedure 12(b)(1) & (6) ........................................................................*passim*

Federal Rule of Civil Procedure 12(g) ........................................................................5

Federal Rule of Civil Procedure 12(h)(2) ........................................................................5

**Statutes**

18 U.S.C. § 2333(a) ........................................................................................................*passim*

28 U.S.C. § 1331..........................................................................................................................2

28 U.S.C. § 1332(a) ...................................................................................................................2

## ***Preliminary Statement***

Plaintiffs made the decision to assert substantive claims against the Lebanese Canadian Bank ("LCB") under the Anti-Terrorism Act ("ATA") in another litigation in another federal district, *Lelchook v. Lebanese Can. Bank, SAL*, No. 1:18-cv-12401 (S.D.N.Y.) ("*Lelchook v. LCB*"), and sue Defendant Société Générale de Banque au Liban S.A.L.'s ("SGBL") under a successor liability theory in this district in this litigation. Plaintiffs' stand-alone successor liability "claim" against SGBL should be dismissed because the ATA does not explicitly provide a federal cause of action for successor liability; the Supreme Court has all but rejected implied rights of actions; and federal common law does not form the basis for such a claim. Plaintiffs therefore are left with nothing more than a state common law *theory*—with no federal claim under the ATA—as the foundation for their amended complaint. ECF No. 73. That is insufficient to state a federal or state claim for relief under Federal Rule of Civil Procedure 12(b)(6), requiring dismissal.

Rather than confront these problems, Plaintiffs—yet again—attempt to rely upon opposition papers filed by another law firm in another ATA case. *See* Plfs.' Opp. to SGBL's Mtn. to Dismiss under Federal Rule 12(b)(6) at 2-3 (opposing instant motion based on arguments made in *Bartlett v. Société Générale de Banque au Liban S.A.L.* 19 Civ. 007 (E.D.N.Y.) ("*Bartlett v. SGBL*")); ECF No. 109 at 1 (Plfs.' Opp. to SGBL's Mtn. to Dismiss under Federal Rule 12(b)(1) at 1 (opposing SGBL's motion to dismiss for lack of subject matter jurisdiction based on arguments made by the *Bartlett* Plaintiffs).[1] But the *Bartlett* Plaintiffs' arguments do not save the *Lelchook* Plaintiffs' stand-alone successor liability "claim" here. And the scant arguments the *Lelchook* Plaintiffs make on their own do not either because those arguments have no bearing on the key question presented for this Court: does the ATA—which makes no mention of successor liability—

[1] To the extent the *Lelchook* Plaintiffs are entitled to incorporate the *Bartlett* Plaintiffs' opposition arguments, SGBL respectfully incorporates its arguments in that case here.

supply an independent federal cause of action for successor liability? Because the ATA unquestionably does not, this Court should dismiss this case and leave adjudication of SGBL's alleged successor liability for another time and place.[2]

## ARGUMENT

### I. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM BECAUSE SUCCESSOR LIABILITY IS A COMMON LAW THEORY ARISING UNDER STATE LAW, NOT FEDERAL LAW

Plaintiffs fail to explain why their stand-alone assertion of successor liability states a federal or state clam for relief against SGBL. Their reliance on the *Bartlett* Plaintiffs' arguments falls short for five reasons.

*First*, the Second Circuit has repeatedly observed that successor liability is a common law doctrine and "'a question of State law.'" *Lelchook v. SGBL*, 67 F.4th 69, 84 (2d Cir. 2023) ("*Lelchook II*") (quoting *LiButti v. United States*, 178 F.3d 114, 124 (2d Cir. 1999)). And, as a matter of both federal and state law, a successor claim is necessarily dependent upon a separate, viable cause of action—one that the *Lelchook* Plaintiffs fail to make in this case. *See City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 290 (N.D.N.Y. 2012) (collecting federal cases and holding "'successor liability' is not a separate cause of action but merely a theory for imposing liability"); *Bardy v. Bonnem*, Sup. Ct., Westchester Co., Nov. 14, 2024, Jamieson, J., unpublished decision and order, at 3-4, Index No. 55909/2023 (collecting state cases and holding

[2] Any remaining questions regarding this Court's subject-matter jurisdiction will be resolved and mooted by the instant Federal Rule 12(b)(6) motion. Because the ATA does not supply Plaintiffs with an independent federal cause of action, there is no federal question jurisdiction under 28 U.S.C. § 1331. And, because it is well settled that a successor liability claim is not an independent cause of action under New York law and must be tethered to a viable underlying cause of action, *see supra* at 2-3, this Court also may dismiss the claim on Rule 12(b)(6) grounds without reaching Plaintiffs' alternative reliance on the diversity statute, which could apply to a state claim. 28 U.S.C. § 1332(a). Should the Court somehow reach that question, that statute does not apply because section 1332(a)'s diversity-of-citizenship and amount-in-controversy requirements must attach to a "civil action," which is not present when a plaintiff only asserts a legal theory and fails to assert a viable cause of action. Finally, if this Court finds that Plaintiffs are entitled to pursue their stand-alone successor claim under state law in federal court, then all non-diverse plaintiffs would have to be dismissed leaving—based solely on Plaintiffs' amended complaint allegation—Alexander Lelchook as the only plaintiff.

successor liability is not an independent cause of action but rather a theory of liability and must be asserted along with a viable underlying claim for relief under New York law).

*Second*, Plaintiffs point to the ATA to cure this analytical deficiency, but that reliance is unavailing. It is undisputed that the ATA does not explicitly mention a federal cause of action for successor liability.

*Third*, Plaintiffs are incorrect to suggest the ATA impliedly creates that cause of action. The Supreme Court recently made clear that it has "rejected the practice of fashioning rights of action" impliedly to provide remedies to plaintiffs even in cases where they may effectuate "the congressional purpose underlying a statute." *FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*, No. 24-345, 2026 U.S. LEXIS 2466 at *8 (June 11, 2026). In fact, the Supreme Court observed that it has "rejected the practice of fashioning rights of action" because "[h]ome-grown causes of action are difficult to reconcile with 'the Constitution's separation of legislative and judicial power.'" *Id.* at *8 (citing, among others, *Central Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A.*, 511 U. S. 164, 170 (1994) and *Alexander v. Sandoval*, 532 U. S. 275, 287 (2001)).

As SGBL also has explained, the presumption against extra-territoriality—as well as Congress's knowledge that state common law doctrines may be available—further counsel against implication of a right that does not appear in the statutory text. *See* SGBL Mtn. to Dismiss under Federal Rule 12(6) at 10-11; ECF No. 107-1 (SGBL Mtn. to Dismiss under Federal Rule 12(b)(1)) at 15-19; ECF No. 108 (SGBL Reply in Support of Mtn. to Dismiss under Federal Rule 12(b)(1)) at 6-7. This is particularly true given the ATA "is part of a comprehensive statutory and regulatory regime," which "reflect[s] the careful deliberation of the political branches on when, and how,

banks should be held liable." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 268 (2018) (plurality opinion).

*Fourth*, nor can Plaintiffs rely on a federal common law successor liability. The Supreme Court has unanimously reiterated that "there is 'no federal general common law[,]' and "[i]nstead, only limited areas exist in which federal judges may appropriately craft the rule of decision," such as "admiralty disputes and certain controversies between States." *Rodriguez v. Federal Deposit Ins. Corp.*, 589 U.S. 132, 136 (2020) (quoting *Erie R. Co. v. Tompkins*, 304 U. S. 64, 78 (1938) and citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 729 (2004)). As in *Rodriguez*, "[n]othing like that exists here" and "state law is well equipped to handle" any successor liability issues in this case. *Id.* at 136.

*Fifth*, Plaintiffs do not allege SGBL violated any provision of ATA—they make that claim instead against LCB in *Lelchook v. LCB*. Furthermore, both the uncontested facts and law of the case establish that SGBL and LCB are different Lebanese banks, with no overlap in corporate ownership, *and SGBL was not involved nor connected to LCB's alleged provision of banking services to individuals and entities associated with Hezbollah.*[3]

Plaintiffs' reliance on a passage in *Lelchook v. SGBL*, 147 F.4th 226 (2d Cir. 2025) ("*Lelchook IV*"), rejecting a formal distinction between an acquisition of assets and liabilities and other bases for successor liability (such as merger) *for purposes of a personal jurisdiction analysis* likewise is misplaced (and unavailable to them). That due process language appears in a paragraph limited to personal jurisdiction and forum selection, *see* ECF No. 108 (SGBL's Reply in Support

---

[3] For this reason, a successor liability theory is wholly unlike the doctrine of *respondent superior* (as Plaintiffs have claimed). For a defendant to be held liable under a *respondent superior* doctrine, a court or jury must find an active, ongoing employer-employee (or principal-agent) relationship at the time the wrongful act took place. That level of involvement and participation in the underlying wrong is not present with respect to an asset-and-liability purchaser like SGBL—a bank that was simply the successful high bidder for certain LCB assets and liabilities many years after the underlying tort took place.

of Mtn. to Dismiss under Federal Rule 12(b)(1)) at 6 n.3, and has no bearing on a substantive liability claim analysis under the ATA. In addition, the *Lelchook* Plaintiffs are estopped from making that argument because they took an opposite position before the Supreme Court, arguing instead that the Second Circuit in *Lelchook IV* did not equate SGBL and LCB as entities but rather analyzed SGBL's *independent* jurisdictional contacts. *See* SGBL Mtn. to Dismiss under Federal Rule 12(b)(6)) at 9 n.9 (discussing judicial estopped principles). The *Barlett* Plaintiffs likewise have taken an opposite position in their case, arguing that "personal jurisdiction relating to ATA claims … has nothing to do with the scope of *liability* under the ATA, or how Congress constructed the ATA (1992) or JASTA (2016)." *Bartlett v. SGBL*, Dkt. 519 at 18 (emphasis in original).

## II. PLAINTIFFS' PROCEDURAL ARGUMENTS AND DISCOVERY CONTENTIONS ARE MISPLACED AND IRRELEVANT

### A. SGBL's Instant Motion to Dismiss Under Federal Rule 12(b)(6) Is Proper

The *Lelchook* Plaintiffs' new argument is that SGBL's instant motion violates Federal Rule 12(g)(2). Plfs.' Opp. at 1; Fed.R.Civ.P. 12(g). They misunderstand the rule because Rule 12(g)(2) operates to prevent a party from raising a *new* Rule 12(b)(6) argument when that party already has filed a motion to dismiss under Federal Rule 12(b)(6). Plaintiffs concede here that SGBL's argument is not new but rather was properly raised in SGBL's original Rule 12(b)(6) motion. *See* Plfs.' Opp. at 1 (stating "**the identical argument** [in SGBL's present motion] was already asserted in SGBL's original motion to dismiss, filed on July 7, 2020"). Rule 12(g)(2) therefore does not apply. Even so, this Court ordered the instant briefing and the defense of "[f]ailure to state a claim upon which relief can be granted … may be raised" at any stage of a litigation, including at trial. Fed.R.Civ.P. 12(h)(2).

Plaintiffs' additional suggestion that this Court should not consider SGBL's instant motion because the legal issue has been briefed in *Bartlett*—a case with different claims, plaintiffs and

defendants—is even more implausible. Whether a similar argument or issue has been raised in another case does not preclude SGBL from raising and briefing it here and, again, this Court explicitly ordered the instant briefing following remand. *See Lelchook IV*,147 F.4th at 240, n.12 (preserving SGBL's right to move for dismissal on grounds other than personal jurisdiction).

**B. Plaintiffs' Conclusory Discovery Allegations Are Misleading and Irrelevant**

The *Lelchook* Plaintiffs' next argument is that SGBL is acting in bad faith by arguing that this Court should dismiss this case and defer adjudication of SGBL's alleged successor liability until "Plaintiffs are successful in obtaining a judgment against LCB," on the grounds that SGBL (and not LCB) is allegedly in possession of relevant customer-specific transactional documents. Plfs.' Opp. at 3 (accusing SGBL of "blatant bad-faith" and claiming "SGBL has stripped LCB of the documentary evidence Plaintiffs need to prove their case"). Plaintiffs' argument is both false and irrelevant.

*First*, as a legal matter, Plaintiffs' factual allegations regarding the state of discovery and the possession of relevant documents have no bearing on the questions currently before this Court. SGBL's arguments are purely legal. The documents in the case (or who possesses them) have nothing to do with those issues.

*Second*, as a factual matter, Plaintiffs concede that SGBL did *not* "strip[] LCB" of anything. Instead, Plaintiffs admit that "LCB was required by Lebanese law and Lebanese authorities to transfer the records to SGBL." Plfs.' Opp., Ex. A, at 1. In addition, far from "withholding the evidence crucial to Plaintiffs' ability to obtain such a judgment against LCB" or "intentionally stymying Plaintiffs' ability to prosecute their case against LCB," Plfs. Opp. at 4, SGBL has taken the consistent and understandable position that Lebanese bank secrecy laws—which carry with them criminal sanctions for bank personnel—preclude it from providing customer-specific documents to either LCB or to Plaintiffs in this case, or any other case against it. *See* Plfs.' Opp.

Ex. A (LCB reports that "SGBL stated it would not provide LCB with copies of customer-specific records because such records are protected by Lebanese bank secrecy"). There is consequently nothing to support Plaintiffs' outrageous claim that SGBL has acted in bad faith or for some nefarious purpose in either case.

Plaintiffs' argument also wholly ignores that they have always been free in *Lelchook v. LCB* to attempt to pursue third-party discovery against SGBL. Instead of doing so, Plaintiffs convinced the district judge to stay all discovery on the grounds "that it would be more efficient and economical for [the *Lelchook v. LCB*] Court and for the parties herein, and conserve significant judicial and party resources, if … Plaintiffs can successfully compel production of the records at issue directly from SGBL [in *Lelchook v. SGBL*], rather than now engage in discovery and motion practice in these Actions regarding the disposition of the records." *Lelchook v. LCB*, Dkt. 148 (Order), at 3. In other words, Plaintiffs' position is that instead of litigating the substantial discovery issues involving the compelled production of transactional records subject to Lebanese bank secrecy in the Southern District of New York where the documents are to be used, *this* Court should devote its time and resources to adjudicate that discovery dispute. Surely Plaintiffs' claimed convenience does not provide any basis for this Court to conclude it should deny SGBL's motion to dismiss.[4]

## III. ALTERNATIVELY, THIS COURT SHOULD DISMISS PLAINTIFFS' SUCCESSOR LIABILITY CLAIMS PREMISED ON CERTAIN ALLEGED ATA LIABILITY THAT IS UNAVAILABLE

In the event this Court does not dismiss this case, it should dismiss (1) Plaintiffs' successor liability claim premised on LCB's alleged primary liability under the ATA, and (2) Ester

[4] On December 11, 2025, the district court in *Lelchook v. LCB* rejected Plaintiffs' request to continue a stay of discovery, ruling: "[t]he Court does not find that good cause has been shown to justify extending the stay. Accordingly, third party discovery should commence immediately." *Lelchook v. LCB*, ECF No. 172, at 1. That litigation—which seeks to establish an underlying question regarding LCB's ATA liability—is therefore proceeding.

Lelchook's successor liability claim premised on LCB's alleged liability to her personally (rather than in a representative) capacity. That liability is not available should this case continue.

### A. Plaintiffs Cannot Assert a Successor Liability Claim Against SGBL Premised on LCB's Alleged Primary ATA

SGBL cannot be held liable for LCB's alleged primary liability under the ATA because, just as the district court found in *Kaplan v. LCB*, Plaintiffs have "fail[ed] to sufficiently allege that Defendant [LCB] committed any act of 'international terrorism' or that their injuries were proximately caused by Defendant's actions." *Kaplan v. Lebanese Can. Bank, SAL*, 405 F.Supp.3d 525, 531 (S.D.N.Y. 2019) (dismissing primary liability claim), *aff'd,* 999 F.3d 842, 853 (2d Cir. 2021) ("*Kaplan*") (affirming dismissal of primary liability claim). Plaintiffs' counsel in this case (who additionally represents the *Kaplan* Plaintiffs and the *Lelchook v. LCB* Plaintiffs) presumably recognizes this legal deficiency by (a) electing not to appeal the district court's dismissal of the primary liability claim against LCB in *Kaplan*, resulting in affirmance by the Second Circuit, and (b) declining to assert a primary liability claim against LCB in *Lelchook v. LCB*. Therefore, if necessary, this Court may readily adopt the cogent reasoning of Judge Daniels, *Kaplan*, 405 F.Supp.3d at 531-34, that identical allegations do not state a primary ATA liability claim against LCB here.

Alternatively, this Court may dismiss the successor claims premised on alleged LCB primary liability because issue and/or claim preclusion principles apply to "preclude parties from contesting matters that they have had a full and fair opportunity to litigate," thereby conserving judicial resources and minimizing the possibility of inconsistent decisions. *Montana v. United States*, 440 U.S. 147, 153–54 (1979). Plaintiffs' counsel admits that the claims of most of the plaintiffs in *Lelchook v. SGBL* are precluded because they were part of *Kaplan v. LCB*, Plfs.' Opp. at 5, but attempts to save the claims of a few, new plaintiffs in *Lelchook v. SGBL*—specifically,

members of the Lelchook family (two of which are suing in multiple capacities) and three American nationals who resided in Israel at the time—from the doctrine's preclusive effect. That attempt fails because this Court may take judicial notice of the fact that these plaintiffs (a) are represented by the same counsel as the *Kaplan* Plaintiffs, (b) share the same legal interest as the *Kaplan* Plaintiffs, and, (c) irrespective of their own injuries or circumstances, must show the same legal liability to prevail on that particular aspect of the successor claim.

These circumstances are more than sufficient to bar any re-litigation of the LCB primary liability claim, including for the "new" plaintiffs, because the law does not require a defendant or its alleged privy to re-litigate the same claim over and over again, particularly where a plaintiff's counsel may have elected not to include a plaintiff at the commencement of a lawsuit, or elected not to amend a complaint to add a discovered plaintiff during its pendency. *See Alpert's Newspaper Delivery Inc. v. New York Times Co.*, 876 F.2d 266, 271 (2d Cir. 1989) ("since the two groups were using the same attorneys in the two actions, the allegations were identical, and there were indications of an industry-wide strategy … sufficient identity of parties existed to bar relitigation of previously raised claims") (citing *Ruiz v. Commissioner of Dept. of Transportation of the City of New York*, 858 F.2d 898 (2d Cir. 1988)); *see also Senatore v. OCWEN Loan Servicing, LLC, No. 16 CV 8125 (VB), 2017 LEXIS 140965,* , *8 (S.D.N.Y Aug. 30, 2017) ("all parties…need not be in privity with all parties implicated in the prior action; it requires only that the parties…have…their interests 'adequately represented' in the prior litigation") (citing *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).

### B. Ester Lelchook's Successor Liability Claim Premised Upon LCB's Alleged Liability to Her Personally (Rather Than in a Representative Capacity) Fails Because She is Not a U.S. National

Finally, Plaintiffs devote the lion's share of their opposition to making an argument—one that flatly contradicts the statutory text and the Second Circuit's view—that non-U.S. nationals are

entitled to recover *personally* notwithstanding the ATA's explicit limitation of its civil remedies and damages provisions to "national[s] of the United States." 18 U.S.C. § 2333(a); *see Kaplan,* 999 F.3d at 846, 847 (finding "[t]he ATA grants United States nationals a private right of action for injury caused by an act of international terrorism" and later relying on its view that "the ATA grants a private right of action *only* to 'national[s] of the United States'") (citation omitted) (emphasis added).

This Court should follow the Second Circuit and find, as the district court did in *Lelchook v. LCB*, that "because Ester Lelchook is not an American citizen, she may only sue in a representative capacity and is precluded from bringing her own personal claims." *Lelchook v. LCB*, Dkt. 152 at 17 (dismissing claims). This Court therefore should dismiss that aspect of her successor liability claim because "if claims cannot be brought against a predecessor entity, they cannot be brought against the successor." *In re Motors Liquidation Co.*, 590 B.R. 39, 63 (S.D.N.Y. 2018). Alternatively, this Court may apply the preclusion principles discussed above and dismiss that aspect of Ester Lelchook's successor claim because it has been dismissed in *Lelchook v. LCB*.

Nor should this Court grant her leave to amend to bring a new claim under Israeli law. Plfs.' Opp. at 14. Not only is there no federal claim upon which supplemental jurisdiction could be based, the attempt to "conclusorily request[] leave to amend in two sentences in its opposition" is insufficient and futile. *WC Capital Mgmt., Ltd. Liab. Co. v. UBS Sec., Ltd. Liab. Co.*, 711 F.3d 322, 334 (2d Cir. 2013). For instance, there is no discussion of the nature of the claim or how she could possibly assert it over twenty years after the attacks given the Israeli statute of limitations for tort claims is typically seven years.

***Conclusion***

Because the amended complaint does not state a viable claim for relief under federal or state law, this Court should grant SGBL's motion to dismiss under Federal Rule 12(b)(6) and dismiss this case without leave to amend.

Dated: August 6, 2026

Respectfully submitted,

**ASHCROFT LAW FIRM, LLC**

*<u>/s/ Michael J. Sullivan</u>*
Michael J. Sullivan
Brian J. Leske
15 Broad Street, Suite 500
Boston, MA 02109
T: 617-573-9400
F: 617-933-7607
msullivan@ashcroftlawfirm.com
bleske@ashcroftlawfirm.com

*Counsel for Société Générale de Banque au Liban S.A.L.*

**<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that this brief complies with the type-volume limitation of Local Rule 7.1(c) because it contains 3,500 words, excluding the parts of the brief exempted by the aforementioned Local Rule.

*<u>/s/ Michael J. Sullivan</u>*
Michael J. Sullivan