**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- X

ESTER LELCHOOK, *et al.*,

Plaintiffs, Case No. 1:19-cv-33-CBA-VMS

-against-

SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL,

Defendant.

---------------------------------------------------------------- X

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Plaintiffs respectfully submit this memorandum in opposition to the Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6), dated May 26, 2026, filed by defendant Société Générale de Banque au Liban SAL ("SGBL").

## Preliminary Statement

SGBL's motion should be denied at the threshold because it violates Rule 12(g)(2) of the Federal Rule of Civil Procedure. That rule provides in relevant part that a party that has already filed a motion to dismiss "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." SGBL's present Rule 12(b)(6) motion is based on the claim that the Antiterrorism Act ("ATA") 18 U.S.C. § 2333 does not allow an action against the successor in liability of the tortfeasor. But **the identical argument** was already asserted in SGBL's original motion to dismiss, filed on July 7, 2020. (ECF 85 at 29-37). Plaintiffs filed an opposition to that motion, and SGBL filed a reply. (ECF 87-88). Thus, the instant motion constitutes a successive Rule 12(b)(6) motion, which is barred under Rule 12(g)(2).

Furthermore, the exact same question raised by SGBL's present Rule 12(b)(6) motion (whether the ATA allows an action against a successor) is **already *sub judice* before this Court** in *Bartlett v. SGBL*, No. 19-cv-00007 (CBA) (VMS) (E.D.N.Y.) ("*Bartlett*").

On January 31, 2020, SGBL moved to dismiss *Bartlett* under Rule 12(b)(6), on the grounds that "**there is no successor liability provision in the ATA granting a private right of action or theory of recovery against an asset purchaser like SGBL**." (*Id*. ECF 136 at 12-19). The *Bartlett* plaintiffs filed an opposition soundly refuting this argument. (*Id*. ECF 142 at 71-74).

On November 18, 2025, SGBL filed a letter motion in *Bartlett* seeking leave to submit further briefing on this question, on the putative grounds that since the parties' original briefing in 2020 there had been "some new legal developments" relevant thereto. The letter motion also presented purported merits arguments in support of SGBL's claim that the ATA does not allow an action against successors. (*Id*. ECF 496). In response, the *Bartlett* plaintiffs filed a letter both opposing SGBL's request for further briefing, and rebutting the merits arguments presented in SGBL's letter motion. (*Id*. ECF 497). On December 1, 2025, this Court denied "SGBL's request for further briefing in the absence of new authority on successor liability" but confirmed that it "**will consider the parties' recent letters**." (*Id.* electronic Order, 12.1.25).

Thus, SGBL has now **briefed this same issue four times** in this Court: (1) SGBL's original 2020 motion to dismiss in this case; (2) SGBL's original 2020 motion to dismiss in *Bartlett*; (3) SGBL's 2025 letter motion in *Bartlett*; and (4) SGBL's current motion to dismiss in this case. Unsurprisingly, this Court has already criticized "SGBL's piecemeal approach to this litigation." (*Bartlett*, electronic Order, 12/12/25).

In order to prevent SGBL's piecemeal litigation tactics from causing a further waste of judicial and party resources, Plaintiffs hereby adopt and incorporate by reference into their instant Opposition to SGBL's current Rule 12(b)(6) motion, the papers below:

a) Plaintiffs' opposition to SGBL's 2020 motion to dismiss (ECF 88 at 23-27);

b) The *Bartlett* plaintiffs' opposition to SGBL's 2020 motion to dismiss (*Bartlett*, ECF 142 at 71-74);

c) The *Bartlett* plaintiffs' letter response to SGBL's 2025 letter motion (*Bartlett*, ECF 497).

Plaintiffs note that item (a) is already part of the record in this case, and items (b) and (c) are currently being considered by this Court in *Bartlett*. This Court has recognized the efficiency of considering SGBL's motions in both cases in combination. (*See* electronic Order, 12/12/2025).

Accordingly, this Memorandum will address three points that are not already covered by the three aforementioned filings that have been adopted and incorporated herein.

## ARGUMENT

## I. SGBL Has Stripped LCB of the Evidence

SGBL asserts that the "Court should dismiss the case in its entirety, leaving the issue of SGBL's successor liability for a later time, for a different court, in the event Plaintiffs are successful in obtaining a judgment against LCB." (Motion at 6, 13).

This argument is the apogee of cynicism and blatant bad-faith, because **SGBL has stripped LCB of the documentary evidence Plaintiffs need to prove their case.**

After commencement of discovery in the actions against LCB pending before Judge Daniels, Plaintiffs served LCB with requests for production of documents relating to Hezbollah's accounts at LCB, and LCB's provision of banking services to Hezbollah. In response, LCB's counsel informed Plaintiffs' counsel that **all such records had been transferred to SGBL** as the result of LCB's liquidation. Counsel for LCB further stated that **SGBL had refused a request to allow LCB access to the records**. (Email from Joseph Alonzo to Robert Tolchin, 6/23/23, Exhibit

A). Thus, SGBL **itself** is intentionally stymying Plaintiffs' ability to prosecute their case against LCB.

Given this situation, on July 14, 2023, the Southern District endorsed a stipulation between Plaintiffs and LCB, staying discovery in the LCB case pending proceedings in this case, on the grounds that if Plaintiffs' ATA action against SGBL proceeds, "Plaintiffs will seek production of the LCB banking records at issue directly from SGBL, which would potentially moot (or significantly limit) the dispute between the parties in these Actions regarding LCB's disposition of the records." (*See* Stipulation [Proposed] Order Staying Discovery, Exhibit B, at 2-4).[1]

Thus, by asserting that its successor liability should be left "for a different court, in the event Plaintiffs are successful in obtaining a judgment against LCB" (Motion at 6)—**while at the same time withholding the evidence crucial to Plaintiffs' ability to obtain such a judgment against LCB**—SGBL is making a mockery of this Court and the Plaintiffs.

This state of affairs powerfully militates against SGBL's claim that the ATA does not allow a claim against the tortfeasor's successor in liability. When it rejected SGBL's challenge to personal jurisdiction based on successor liability, the Second Circuit explained that such a result was necessary because Plaintiffs would be severely harmed "if LCB is judgment-proof." *Lelchook v. SGBL*, 147 F.4th 226, 248 (2d Cir. 2025). **All the more so, given that SGBL is withholding the evidence needed <u>to even obtain a judgment</u> against LCB.**

## II. <u>Dismissal of Primary Liability Against LCB Is Irrelevant to the New Plaintiffs</u>

---

[1] The stay has been extended from time to time, as this case moved toward discovery. The court has recently ordered the parties to submit a discovery plan. (*See* 08-cv-07253 (S.D.N.Y.) at ECF 257). But as practical matter, with the relevant LCB records in the hands of SGBL, Plaintiffs' case against LCB remains stalled.

SGBL argues that because Judge Daniels' dismissal of the primary liability claim asserted in the original action against LCB (08-cv-07253 (S.D.N.Y.)) was not appealed, the Plaintiffs' primary liability claim against SGBL as LCB's successor must also be dismissed. (Motion at 12).

This argument fails because there are **seven plaintiffs** in this case who **were not plaintiffs** in 08-cv-07253 (S.D.N.Y.), namely: Ester Lelchook (individually and as personal representative of the estate of David Martin Lelchook); Michal Lelchook; Yael Lelchook; Alexander Lelchook (individually and as personal representative of the estate of Doris Lelchook); Malka Kumer; Chana Liba Kumer; and Miriam Almackies.

Accordingly, these seven new plaintiffs are in no way bound or precluded by Judge Daniels' decision on primary liability.

SGBL also argues that the seven new plaintiffs cannot assert a primary liability claim against it because they did not assert such a claim in their case against LCB. This assertion is baseless, because it is well established that "a successor liability claim can be pursued in a separate suit, *see, e.g., AW Indus., Inc. v. Sleepingwell Mattress Inc.*, No. 10-CV-4439, 2011 WL 4404029, at *5 (E.D.N.Y. Aug. 31, 2011) ("Although a separate corporate entity, [the defendant] could be held liable for [another entity's] acts or judgments as an alter ego, mere continuation, or liable successor of [that entity], and [the] plaintiff is free to initiate a separate action to that effect.")." *Lin v. Toyo Food, Inc.*, 2016 WL 4502040, at *3 (S.D.N.Y. Aug. 26, 2016). *See also e.g. Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp., Inc.*, 2009 WL 10687800, at *6 (D. Conn. Nov. 19, 2009) (same).

Thus, **none** of the Plaintiffs were required to sue LCB **at all**.

## III. <u>Ester Lelchook's Claim Should Not Be Dismissed</u>

SGBL's motion to dismiss the claims of Ester Lelchook, the widow of decedent David Lelchook, should be denied because (a) Ester has standing to assert an ATA claim as the "survivor"

of an American citizen; (b) alternatively, if she lacks standing, she should be permitted to supplemental claims under Israeli law.

**a. Ester Lelchook Has ATA Standing**

The ATA provides in relevant part that, "Any national of the United States injured in his or her person…by reason of an act of international terrorism, <u>or</u> his or her estate, <u>survivors</u>, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees." 18 U.S.C. § 2333 (emphasis added). Therefore, though Ester Lelchook herself is not a U.S. citizen, her late husband David Martin Lelchook was, and she is entitled to prosecute an ATA action and recover damages as a "survivor" of her husband.

Most courts to have considered the question to date have held that ATA § 2333—the plain language of which permits a claim by "survivors" of U.S. nationals, without reference to their citizenship—permits ATA claims by the non-U.S. family members (such as spouses or children) of U.S. citizens killed in terrorist attacks. As Judge Brian M. Cogan correctly held:

> Defendant…contends that the Henkin children may not seek redress under the ATA because they are not U.S. nationals.…
>
> The Henkin children's nationality makes no difference. 18 U.S.C. § 2333(a) contains no requirement that the survivors or heirs of a United States national killed by an act of international terrorism must themselves be citizens of the United States. Defendant's narrow interpretation would undermine the ATA's broad remedial purpose to grant a remedy to U.S. nationals and their families who suffered from injury to an individual or property as a result of international terrorism. Accordingly, this Court will not read such a requirement into the statute.

*Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, 495 F. Supp. 3d 144, 153-154 (E.D.N.Y. 2020) (cleaned up). *Cf. Ungar v. Palestinian Authority*, 304 F. Supp. 2d 232, 271 (D.R.I. 2004) ("18 U.S.C. § 2333(a) contains no requirement that the survivors or heirs of a United States national

killed by an act of international terrorism must themselves be citizens of the United States, and this court will not read such a requirement into the statute."); *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 620 (E.D.N.Y. 2006) (rejecting argument that "survivors" of U.S. victims must themselves be Americans, and holding that: "plaintiff Matanya Nathansen, a citizen of Israel, sues as the father of U.S. citizen Tehilla Nathansen. Julie Averbach, an Israeli citizen, sues as the wife of U.S. citizen Steve Averback. Amichai, Nava, Orit and Netanel Steinmetz sue as the children of U.S. citizens Jacob and Deborah Steinmetz, and Nevenka Gritz, a French citizen, sues as the mother of U.S. citizen David Gritz. Accordingly, these plaintiffs have sufficiently alleged that they are the heirs or survivors of U.S. nationals and may sue under 2333(a)."); *Weinstock v. Abu Marzook*, 2019 WL 1470245, at *4 (S.D. Fla. Apr. 3, 2019) ("Dov Weinstock, who was not a United States citizen, is included among those permitted to bring claims under Section 2333. As Yitzchak's father, Dov, was a 'survivor' of a United States national who was murdered in the terrorist attack. The ATA "contains no requirement that the survivors or heirs of a United States national killed by an act of international terrorism must themselves be citizens of the United States, and this court will not read such a requirement into the statute.") (quoting *Ungar*).

Judge Cogan's holding in *Henkin* (and the identical holdings in *Ungar*, *Weiss* and *Weinstock*) are overwhelmingly supported by the "Plain Language Rule" of statutory construction. That fundamental canon mandates that: "[I]n any case of statutory construction, we start our analysis with the language of the statute. Where the statutory language provides a clear answer, our analysis ends there." *Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018) (cleaned up). *Cf. Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 141 (2d Cir.

2013) ("In construing a statute, we begin with the plain language, giving all undefined terms their ordinary meaning.").

The court in *Henkin* and its predecessors followed this plain language rule. The ATA provides in relevant part—very plainly—that: "Any national of the United States injured…by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor…". 18 U.S.C. § 2333 (emphasis added). Judge Cogan read this provision, observed that "survivors" contains no nationality restriction, and correctly declined to read into the plain statutory language a limitation that Congress elected not to include.

Innserting such a restriction into the ATA violates not only the plain language canon, but also the rule that Congress is presumed to act intentionally, when it employs disparate language. "[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.…Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Bates v. United States*, 522 U.S. 23, 29-30 (1997) (cleaned up).

Furthermore, the two sections of § 2333 at issue (*i.e.*, "national of the United States" or his or her "survivors") are separated by the term "or." This is significant, because "or" "is almost always disjunctive, that is, the words it connects are to be given separate meanings." *United States v. Woods*, 571 U.S. 31, 45 (2013) (cleaned up); *United States v. Awan*, 607 F.3d 306, 313 (2d Cir. 2010) ("Canons of statutory construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise.") (brackets omitted).

Moreover, the term "or," specifically as used in ATA § 2333, has repeatedly and correctly been held to be disjunctive. *Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *3 (S.D.N.Y. Aug. 2, 2011) (Hellerstein, *J.*) (noting that § 2333 uses "the disjunctive article 'or'" and holding

that: "The fair meaning is that any national, or that national's estate, heirs or survivors may sue. This fair interpretation implements the congressional intent to interpret the statute broadly."); *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1338 (D. Utah 2006) ("Congress chose to write the statute in the disjunctive.").

Thus, because ATA § 2333(a) grants a cause of action to a "national of the United States" <u>or</u> her "survivors," these terms are to "be given separate meanings," *Awan*, 607 F.3d at 313, and there is no basis to read a U.S. nationality requirement into the term "survivors."

Additionally, the holding in *Henkin*, *Ungar*, *Weiss* and *Weinstock* is strongly supported by another rule of statutory construction: the "Rule Against Superfluities." It is fundamental that statutes must be construed so as "to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks and citation omitted); *see also United States v. Nordic Vill., Inc.*, 503 U.S. 30, 36 (1992) (noting the "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect"). Indeed, rendering a term in a statute superfluous "is fatal" to any proposed construction of the statute, because "[w]e are obliged to give effect, if possible, to every clause and word of a statute, and to render none superfluous." *Tablie v. Gonzales*, 471 F.3d 60, 64 (2d Cir. 2006) (cleaned up).

Any construction that parses the term "survivors" in § 2333 to mean only "survivors" of U.S. national terror victims, who are <u>themselves</u> U.S. nationals must be rejected because it would render the term "survivors" entirely unnecessary and superfluous. That is because a U.S. national whose family member was killed in a terrorist attack <u>already has an independent claim under the ATA, by virtue of being a U.S. national</u>. "Courts that have considered this issue universally allow ATA claims based on the emotional distress that U.S. nationals experience as a result of the death or injury of their family members." *Sokolow v. Palestine Liberation Org.*, 60 F. Supp. 3d 509, 516,

n.8 (S.D.N.Y. 2014). Indeed, a U.S. national is entitled to bring an ATA action for the terrorist murder of a family member, even if the deceased victim was not an American:

> It is clear that Ms. Biton cannot recover under the ATA as a representative of Mr. Biton's estate or as his survivor, because he was not a U.S. national. If Ms. Biton sues as the principal victim herself, however, she may be able to state a claim if she can allege a cognizable injury that arose by reason of an act of international terrorism. 18 U.S.C. § 2333(a). The amended complaint avers that Ms. Biton is "an American citizen" and that her husband's death resulted from "a bombing attack on an Israeli civilian vehicle traveling in the Gaza Strip." …
>
> The Court concludes that Ms. Biton has properly alleged an "injur[y] in…her person" for purposes of the ATA. *Id.* The statute does not specifically require that a plaintiff suffer *physical* harm prior to filing suit. Moreover, the term "personal injury" means "[a]ny invasion of a personal right, including mental suffering and false imprisonment." Black's Law Dictionary (7th ed. 1999). Ms. Biton's alleged injuries fall within this widely-accepted definition.…Similarly, "mental anguish, emotional pain and suffering, [and] loss of society, companionship, comfort, protection, marital care, attention, advice or counsel" are harmful. *Brooks v. Bienkowski,* 150 Md.App. 87, 818 A.2d 1198, 1200 (2003) (defining solatium). These injuries are cognizable under the plain language, as well as a common-sense interpretation, of the ATA.

*Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 181–82 (D.D.C. 2004) (footnotes omitted). *Cf. Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 589 (E.D.N.Y. 2005) (agreeing with *Biton* and finding that "plaintiffs, who are U.S. citizens suing for various non-physical injuries, such as emotional distress and loss of consortium, after their family members, who were not U.S. nationals, became victims of acts of international terrorism" were entitled to bring independent claims under the ATA); *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 426 (E.D.N.Y. 2009) (endorsing *Biton* and *Linde*, finding that American wife and children of Canadian citizen killed in terrorist attack could bring ATA claims, and noting that "every court that has construed § 2333(a) has reached the same conclusion"); *Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19, 30 (D.D.C. 2007) (same).

Since U.S. nationals whose family member was killed in a terrorist attack already have a cause of action under the ATA by dint of being U.S. nationals (whether or not their decedent was an American), and therefore would never need to bring suit as "survivors," the term "survivors" would be completely superfluous if it were construed to include only "survivors" who are U.S. nationals.

Simply put, if Ester Lelchook were American, she would be entitled to bring an ATA action as a "U.S. national," and would not need to resort to an action as a "survivor." Therefore, construing "survivors" to require U.S. nationality would render that term superfluous—which "is fatal" to such a construction. *Tablie*, 471 F.3d at 64 (emphasis added). Indeed, only by construing "survivors" as encompassing non-U.S. nationals can that term be given "some operative effect." *U.S. v. Nordic Vill.*, 503 U.S. at 36.

Since the plain language of ATA § 2333 and the rules of statutory construction allow only one interpretation of the term "survivors," it would be inappropriate to consult legislative history. *U.S. v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016) ("We resort to legislative history only if, after consulting canons of statutory instruction, the meaning remains ambiguous."); *Lotes v. Hon Hai Precision Indus.*, 753 F.3d 395, 406 (2d Cir. 2014) ("courts do not resort to legislative history to cloud a statutory text that is clear.") (quotation marks omitted).

If the Court nevertheless finds that the legislative history of ATA § 2333 must be consulted, that history clearly supports the construction of § 2333 reflected in *Henkin* and its predecessors.

As originally drafted, ATA § 2333 referenced only "any national of the United States." The Justice Department proposed that Congress modify the text of the bill to allow suits by the family members of the U.S. national. Specifically, the Justice Department suggested "that this provision be amended to include, in addition to the individual directly affected, such additional parties as the estate of the decedent, survivors, and heirs. This will ensure that the bill is fully

protective of the interests of all relevant parties to the civil suit." Statement of Deputy Assistant Attorney General Steven R. Valentine, July 25, 1990, *Antiterrorism Act of 1990: Hearing Before the Subcomm. on Courts & Admin. Practice of the Senate Comm. on the Judiciary,* 101st Congress 8 (1990) at 38 (emphasis added). *See also id*. at 34 ("The Department supports legislation to provide a new civil remedy against terrorists…for the families and relatives of victims.") (emphasis added).

Thus, the term "survivors" was added to the ATA in order to be "protective of the interests of all relevant parties to the civil suit," including "the families and relatives" of U.S. victims. Clearly, the family members of U.S. terror victims are among "all relevant parties" to an ATA suit, even if they themselves are not U.S. nationals. This legislative history strongly supports the idea that a nationality requirement should not be read into the term "survivors."

Nor is it in any way surprising or illogical that Congress chose to protect all family members of U.S. citizens, regardless of their own citizenship. Aside from the obvious humanitarian goal of not leaving the widows or orphans of U.S. citizens murdered in terrorist attacks (such as Ester Lelchook) without recourse or remedies, allowing ATA suits by such family members—*i.e.*, increasing the financial exposure and liability of terrorists and their supporters—serves the overarching purpose of the ATA. "[T]he ATA's legislative history reflects that Congress conceived of the ATA, at least in part, as a mechanism for protecting the public's interests through private enforcement. One of the Act's sponsors…declared that the Act would 'empower[ ] victims with all the weapons available in civil litigation[']…The District Court here appropriately recognized the important U.S. interests at stake in arming private litigants with the 'weapons available in civil litigation to deter and punish the support of terrorism." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 112 (2d Cir. 2013). *Cf. Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 149, n.10 (D.C. Cir. 2011) ("The ATA's legislative history confirms that the primary purpose of the

statutory multiplier is to deter future acts of terrorism"); *Weiss v. Arab Bank, PLC*, 2007 WL 4565060, at *5 (E.D.N.Y. Dec. 21, 2007) ("purpose of the ATA [is] to deter terrorist activity and hold liable those who engage in it."); *Knox v. Palestine Liberation Org.*, 442 F. Supp. 2d 62, 75 (S.D.N.Y. 2006) ("the underlying purpose of the ATA [is] to deter and punish acts of international terrorism.").

SGBL cites language from *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 847 (2d Cir. 2021), as purportedly concluding that ATA § 2333(a) only permits suits by U.S. nationals. But the language from *Kaplan* relied on by SGBL did not so hold. Rather, it was discussing the complicated prior history of the *Kaplan* case, which had originally been brought by "several dozen American, Canadian, or Israeli citizens." (*Id.* at 845). The Americans sued under the ATA, whereas the Canadians and Israelis brought suit under the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"). (*Id.*). The *Kaplan* ATA claims were later dismissed on grounds of collateral estoppel, and the *Kaplan* ATS claims were dismissed for lack of subject-matter jurisdiction. *Licci v. Lebanese Canadian Bank, SAL*, Civ. 2015 WL 13649462 (S.D.N.Y. Apr. 14, 2015).

In the language relied upon by SGBL, the court was merely noting that the American *Kaplan* plaintiffs later moved to vacate the dismissal of their ATA claims, while the Canadian and Israeli *Kaplan* plaintiffs, who had sued only under the ATS, did not do so. Moreover, the complaints in *Kaplan* reflect that none of the Canadian or Israeli *Kaplan* plaintiffs ever claimed to be "survivors" of (or otherwise related to) the American *Kaplan* plaintiffs, and that the American *Kaplan* plaintiffs' claims arise solely from personal and economic injuries, not death. (*Kaplan v. Lebanese Canadian Bank, SAL*, 08-cv-7253 (S.D.N.Y), DE 1, 23, 99). Thus, the language in *Kaplan* cited by SGBL is irrelevant to the issue here.

In sum: Ester is entitled to assert an ATA claim as a "survivor" of her late husband.

**b. Alternatively, Ester Should Be Permitted to Assert a Claim Under Israeli Law**

If this Court nevertheless finds that Ester Lelchook cannot assert an ATA claim, she should be permitted to file an amended complaint asserting a claim under Israeli law. It cannot be disputed that Ester's individual claim as the widow of David Martin Lelchook are "part of the same case or controversy" as her ATA claim in her capacity as the heir of her late husband's estate. 28 U.S.C. § 1367.

Therefore, solely in the alternative (*i.e.*, if this Court finds she cannot assert an ATA claim in her individual capacity), Ester should be permitted to assert such a claim under Israeli law.

**WHEREFORE**, SGBL's motion should be denied.

Dated: Brooklyn, New York
July 16, 2024

Respectfully submitted,

**THE BERKMAN LAW OFFICE, LLC**
*Attorneys for Plaintiffs*

by: ______________________
Robert J. Tolchin

829 East 15th Street, Box 7
Brooklyn, New York 11230
718-855-3627
rtolchin@berkmanlaw.com

**CERTIFICATION**

I hereby certify that on July 10, 2026, I served the within by electronic mail on:

Brian Leske, Esq.
Ashcroft Sullivan LLC
200 State Street
Boston, MA 02109
(617) 573-9400
bleske@ashcroftlawfirm.com

Robert J. Tolchin

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation of Local Rule 7.1(c) because it contains 4,359 words, excluding the parts of the brief exempted by the aforementioned Local Rule.

Robert J. Tolchin